(No. 33493.—

RUTH SAYRE PETERS, Guardian of Sandra Jean Sayre, Appellee, *vs.* RAMONA SAYRE GEBHARDT *et al.*, Appellants.

*Opinion filed September 23, 1955—Rehearing denied Nov. 21, 1955.*

DILSAVER and GILKERSON, of Mattoon, (THOMAS F. RYAN, of Mattoon, of counsel,) for appellant RAMONA Sayre Gebhardt; JEFFERSON LEWIS, of Petersburg, for appellants Ramona Christine Gebhardt and Paul Raymond Gebhardt.

BERNARD C. MAYBERRY, of Lincoln, and GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, (ROBERT H. BRUNSMAN, of Springfield, of counsel,) for appellee.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

This appeal from the circuit court of Menard County involves the construction of the will of Laura F. Sayre, who died on June 7, 1941.

The testatrix, a widow, executed her will on March 10, 1938, at which time she was 86 years old. She had one son, Frank Sayre, age 58, who was married to Eliza Jane Sayre. Frank and Eliza also had one son, John Ray Sayre, age 37, who was the father of Ramona Sayre, age 13.

John Ray (the grandson) and Ramona's mother were divorced in 1928, and he married the petitioner, Ruth Sayre Peters, in 1935. No children had been born to them as of the time the will was executed.

The will, after customary provision for debts and funeral expenses, provided as follows:

"ITEM Two—I do hereby give, devise and bequeath to my daughter in law, Eliza Jane Sayre, as Trustee, and to her successor or successors in trust as hereinafter provided, all of my property of every kind and character, real, personal or mixed, wherever situated, for the following purposes:

(a) To take full and complete charge of my property and estate, rent and lease the real estate, pay taxes, insurance and upkeep on same, collect rents, sell grain, and collect all income from any of my property; and said Trustee and her successors to have full control of said income and its expenditure during the continuance of said trust.

(b) Except as hereinafter provided, to expend the income from such property for the benefit of my son, Frank Sayre, so long as he shall live; said Trustee and her successors in trust to have full control of such income and its expenditure.

(c) To expend the income from such property for the benefit of my daughter in law, Eliza Jane Sayre, provided she survives my said son, Frank Sayre.

(d) Except as hereinafter provided in Item "Four," the successors in trust as hereinafter provided, to expend the income from such property for the benefit of my grandson, John Ray Sayre, if my said grandson survives my son, Frank Sayre and my daughter in law, Eliza Jane Sayre.

(e) Except as hereinafter provided in Item "Four," said trustee shall expend the income from my property for the benefit of the child or children of my grandson, John Ray Sayre, who may be living at the time of his death, excepting Ramona Sayre, who is provided for in Item "Four" herein, after my said son, my said daughter in law and my said grandson shall have departed this life, and such income to be expended for each and all said children of John Ray Sayre, excepting Ramona Sayre, until such child or children shall have attained the age of twenty-one (21) years, and as each of such children of John Ray Sayre attains the age of twenty-one years, such trust property shall vest in such child and the heirs of his or her body in fee simple as to such child's proportionate share thereof, it being my intention that said child or children of John Ray Sayre shall take in equal shares, such trust property and to the heirs of his or her body, and such share or shares shall vest as each child attains the age of twenty-one years.

ITEM THREE (3)—I hereby give, devise and bequeath all of the property which shall remain in the hands of my said Trustee or her successors in trust, to the child or children of John Ray Sayre, the real estate to vest them and the personal property to become their property and to the heirs of the body of each such person as such person attains the age of twenty-one years, subject only to the provisions herein involving the payment of income during their respective lives to my said son, daughter in law and my grandson, and subject to the provisions in Item "Four" herein.

ITEM FOUR (4)—I direct that the Trustee of my estate and property shall pay the proceeds, after the payment of taxes, insurance and upkeep on the same, from the J. C. Davenport land in Cartwright Township, Sangamon County, Illinois, containing one hundred acres, more or less, beginning one year after this will is admitted to probate or beginning upon the closing of my estate by my executor in the event the settlement of my estate shall be delayed for any cause, to my great granddaughter, Ramona Sayre, and the said Trustee shall continue to pay same to her until she attains the age of twenty-one (21) years, and when she attains the age of twenty-one years, said real estate mentioned and described in this paragraph shall vest in her as her own property forever; should she the said Ramona Sayre die prior to the time she attains the age of twenty-one years, then such real estate and accumulations therefrom shall become a part of the trust fund or estate for the other children of John Ray Sayre.

ITEM FIVE (5)—It is my will and I hereby direct that in the event my said daughter in law, Eliza Jane Sayre, shall depart this life prior to the termination of the trust herein provided, then in such event, I do hereby appoint John M. Craddock, of Springfield, Illinois, to be her successor in trust to carry out the provisions of

this will. And in the event my daughter in law and said John M. Craddock shall fail to act or shall both die prior to the completion of said trust, then the sitting judge of the Circuit Court of Menard County, Illinois, shall appoint some proper person to act as such trustee.

ITEM SIX (6)—It is my will that in case any child or children of John Ray Sayre shall depart this life, leaving no child or children surviving, prior to such child attaining the age of twenty-one years, then the interest of such deceased child or children shall go to the surviving brothers and sisters of such deceased child; provided however that this provision shall not apply to said Ramona Sayre, as provision has hereinbefore been made as to her death, and she shall not have her rights or interests enhanced by the death of any such child. In the event of the death of all said children of John Ray Sayre, as herein provided, prior to attaining the age of twenty-one years, leaving no child or children surviving, preventing the vesting of said property, then I give and devise all my real and personal estate to the Methodist Episcopal Sunset Home, at Quincy, Illinois, and the Cunningham Home at Urbana, Illinois, share and share alike in fee simple.

ITEM SEVEN (7)—It is my will that said Trustee and successors shall be and they are empowered to sell, dispose of or mortgage any and all my property as said trustee shall deem best and shall account for the proceeds thereof as a part of the trust and for such purposes, I authorize and empower the acting trustee to make deed or other instrument as may be necessary, such sale or disposition shall be in the discretion, which I make absolute, of either my said Trustee or her successors to be designated as herein provided; and the proceeds of all such sales, mortgages or other dispositions, to become a part of the said Trust fund and subject to the terms and conditions herein mentioned for such fund.

ITEM EIGHT (8)—It is further my will and I hereby make every provision hereof conditional upon my insistence that none of the property herein devised or bequeathed nor any of the income derived therefrom shall be subject to any obligation or obligations of any kind or character either existing against or to be hereafter created by either my son, Frank Sayre, or my grandson, John Ray Sayre.

ITEM NINE (9)—I hereby nominate and appoint my said daughter-in-law, Eliza Jane Sayre, the executrix of this my will and I request that she be permitted to act in the capacity of executrix without being required to provide any sort of a bond in any capacity.

IN WITNESS WHEREOF I have hereunto subscribed my hand and affixed my seal this 10th day of March, A.D. 1938.

LAURA F. SAYRE (SEAL)"

Eighteen months after the will was executed, John Ray and Ruth had a daughter, Sandra Jean Sayre. There was no other change in the family prior to the testatrix's death on June 7, 1941. At that time, the property devised by item 4 was valued at $12,000, and the remainder of the property was worth $60,000.

Thereafter, John Ray (the grandson) died in 1941, Eliza (the daughter in law) died in 1944, and Frank (the son) died in 1945.

Ramona (one of the two great-grandchildren) became twenty-one on May 20, 1946, and two children have been born to her, Ramona Christine Gebhardt in 1948 and Paul Raymond Gebhardt in 1951. Sandra Jean (the other great-grandchild) was fifteen at the time of the hearing below and has had no children.

The circuit court construed the will to create a vested fee simple estate in Sandra Jean in all of the property (except the land devised in item 4), subject only to being divested *pro tanto* by child, or children, born to her prior to becoming twenty-one.

The decree further found that Sandra Jean was entitled to all of the income of said property from May 28, 1945 (the date of Frank's death), until she becomes twenty-one; that the devises and bequests over of all the property of the decedent in item 6 (including that to the Homes) have been completely defeated and no longer can take effect; and that the interests created in the will did not violate the rule against perpetuities or the kindred rule applicable to equitable interests since all of the estates created were bound to vest within twenty-one years after the death of John Ray who was a life in being at the testatrix's death.

The appellants are Ramona and her two minor children, and Sandra Jean (by her mother as guardian) is the appellee.

It is fundamental that the testatrix's intention, as manifested by the words of her will, must be given effect, un-

less an attempt is made to accomplish a purpose or to make a disposition contrary to some rule of law or to public policy. (*Stagg* v. *Phenix,* 401 Ill. 134; *Hartwick* v. *Heberling,* 364 Ill. 523.) This intention is to be gathered from a view of the will as a whole, and that construction should be adopted which gives effect to all the language used. (*Golstein* v. *Handley,* 390 Ill. 118; *Appleton* v. *Rea,* 389 Ill. 222.) Moreover, effort should be made to reconcile apparently conflicting or inconsistent provisions. (*Edgar County Children's Home* v. *Beltranena,* 402 Ill. 385; *Scott* v. *Crumbaugh,* 383 Ill. 144.) Caution should be observed in considering case precedent, for as this court has said, "while the decisions in other cases may serve to guide the court with respect to general rules concerning the construction of wills, unless the cases examined be, in every respect, directly in point and involve the construction of similar language, they are not controlling, but only persuasive." *Glaser* v. *Chicago Title & Trust Co.* 393 Ill. 447, 456.

By item 2, the testatrix purported to leave all of her property in trust. The income was to be distributed in the following order: to Frank (a son) for life; then to Eliza (a daughter in law) for life; then to John Ray (a grandson) for life; and then (in item 2-e) to the child or children of John Ray who are living at the time of his death (except Ramona) until such child or children attain the age of twenty-one.

In item 4, certain real property (a one-hundred acre farm) is devised in trust with Ramona to receive the income until she becomes twenty-one, at which time the property is to "vest in her (Ramona) as her own property forever." In an apparent reference to item 2, it was further provided that should Ramona die before she becomes twenty-one, "then such real estate and accumulations therefrom shall become a part of the trust fund or estate for the other children of John Ray Sayre."

As regards all of the property other than that devised in item 4, it is to be disposed of in accordance with item 2(e) as follows: "as each of such children of John Ray Sayre attains the age of twenty-one years, such trust property shall vest in such child and the heirs of his or her body in fee simple as to such child's proportionate share thereof, it being my intention that said child or children of John Ray Sayre shall take in equal shares, such trust property and to the heirs of his or her body, and such share shall vest as each child attains the age of twenty-one years." The words "such children of John Ray Sayre" obviously refer to the class previously designated in the same sentence; namely, the child or children of John Ray Sayre living at his death with the exception of Ramona.

The appellee contends that apart from the devise in item 4 to Ramona, the remainder of the testatrix's property is covered by said item 2(e). And since John Ray died in 1941, leaving no child or children other than Sandra Jean and Ramona, the class to which the gift was expressly made in item 2(e) closed at that time. This leaves Sandra Jean as the only member thereof, Ramona having been expressly excluded.

The appellants, while arguing that a proper construction of the devise in 2(e) would place Ramona in the class, mainly rely upon item 3 of the will as the provision governing the distribution of the trust property. Item 3, in some respects parallel to 2(e), leaves all of the property "which shall remain in the hands of my said Trustee or her successors in trust, to the child or children of John Ray Sayre, the real estate to vest them and the personal property to become their property and to the heirs of the body of each such person as such person attains the age of twenty-one years, subject only to the provisions herein involving the payment of income during their respective lives to my said son, daughter in law and my grandson, and sub-

ject to the provisions in Item 'Four' herein." The class therein designated (child or children of John Ray Sayre) does not exclude Ramona, and so both she and Sandra would be eligible to receive the property thereunder. To determine which of these two provisions (*i.e.,* item 2-e or item 3) should govern, it is necessary to consider yet another item of the will, item 6.

Item 6 deals with gifts over upon certain contingencies. The first part provides that in case any child or children of John Ray shall die without any child or children surviving, and before attaining the age of twenty-one, "then the interest of such deceased child or children shall go to the surviving brothers and sisters of such deceased child; provided however that this provision shall not apply to said Ramona Sayre, as provision has hereinbefore been made as to her death, and she shall not have her rights or interests enhanced by the death of any such child." This provision refers to the situation where a child of John Ray (other than Ramona) dies before becoming twenty-one and without leaving a child (or children) surviving, and there is another child (or children) of John Ray living other than Ramona. Since Sandra Jean and Ramona are the only children of John Ray (who is deceased) this gift over can never take effect.

The testatrix further provided in item 6, that in the event *all* of John Ray's children die prior to becoming twenty-one, leaving no child or children surviving, "preventing the vesting of said property," then *all* of her property is to go to named Homes (Methodist Episcopal Sunset Home and Cunningham Home). The parties agree that this latter provision covers both Sandra Jean and Ramona and refers to all of the testatrix's property.

Considering the will in its entirety, we are of the opinion that the testatrix intended item 2(e) to control, rather than item 3.

First, in several places she expressly excludes Ramona from sharing this property equally with other children of John Ray. For instance, item 2(e) itself is specific on the point. Likewise, in item 6 she says the provision was not to apply to Ramona "as provision has hereinbefore been made as to her death, and she shall not have her rights or interests enhanced by the death of any such child." And even in item 4, by which Ramona was individually given one-hundred acres of real estate, the testatrix, in an apparent reference to the trust estate created by item 2, says if Ramona dies before she becomes twenty-one, the land is to become a part of the "trust fund or estate for the other children of John Ray Sayre."

Second, item 2 is the more explicit, complete and articulate expression of the testatrix's intention. Indeed, in the context it might seem that item 3 was inserted more as an afterthought, by way of summarizing (albeit incompletely) what had already been stated in the preceding provision, item 2. However, the appellee's position that item 3 can reasonably be read as supplementary to and not in conflict with item 2(e) can be supported. For reference is made to property remaining in the hands of the trustee upon the completion of the purposes of the trust. Thus viewed, item 3 is residuary in nature and designed to insure a complete disposition of the property by taking account of all possible contingencies.

Having thus concluded that item 2(e) is controlling, we must next determine its effect. As noted, Sandra Jean is the sole member of the class, Ramona being expressly excluded. And at the time of the hearing below, Sandra Jean did not have any children and had not attained the age of twenty-one.

As regards the income, Sandra Jean is entitled to receive the entire income from the trust property from the date of Frank's death (on May 28, 1945) until she becomes twenty-

one. But the directions for the distribution of the corpus are not so precisely stated. It is clearly stated, however, when that distribution (or as to real estate, the vesting in possession) is to occur. The property is to be distributed (or indefeasibly vested in possession) when the purposes of the trust have been accomplished; namely, when Sandra Jean becomes twenty-one or dies before attaining that age. Until that time, the trustee remains obligated to pay Sandra Jean the income from the property, and she is the last person eligible to receive trust income.

The time for such distribution having been established, there remains the problem of determining who shall receive the property and in what proportions. In this regard, consideration must be given to the contingencies which might occur between now and then. First, Sandra Jean may live to be twenty-one, and she may or may not have had a child or children born to her before that time. Second, Sandra Jean may die before she becomes twenty-one, with or without leaving a child or children surviving.

We shall deal first with the case of Sandra Jean living to be twenty-one, and in so doing consider the effect of her having or not having a child born to her before that time.

Turning to the devise under item 2(e), it will be seen that the words of gift are in the form "to A and the heirs of her body in fee simple." The super-added words "in fee simple," when viewed in the context of the will, indicate that the words "heirs of body in fee simple" were not used as words of limitation, but as words of purchase to indicate the taker or takers. (*Albers* v. *Donovan*, 371 Ill. 458; *Benson* v. *Tanner*, 276 Ill. 594; *Aetna Life Ins. Co.* v. *Hoppin*, 249 Ill. 406.) Therefore, they did not create a fee tail estate to which section 6 of the Conveyances Act of Illinois would apply.

Moreover, "heirs of body" thus being words of purchase and designating the taker or takers of the fee interest,

when considered in relation to the remainder of the will, signify children. For in item 6, the gift over is to become effective in case the children of John Ray depart this life "leaving no *child* or *children* surviving prior to such child attaining the age of twenty-one years." Later in item 6, there is another gift over where all children of John Ray die prior to attaining twenty-one *leaving no child or children surviving*. Hence, these words used in other parts of the will in connection with the purported gift over of the fee show that the testatrix's probable intention was to use the words "heirs of body" to mean children. Cf. *Albers* v. *Donovan*, 371 Ill. 458; *Seymour* v. *Bowles*, 172 Ill. 521.

While we are of the opinion that as so used "heirs of body" signify children (that is, children of Sandra Jean,) we do not believe the children born prior to Sandra Jean becoming twenty-one are to take concurrently with their mother, as found by the trial court. This would mean that those children would be favored (as opposed to children of Sandra Jean born to her after she becomes twenty-one), and it would further result in Sandra Jean's estate being diminished by children being born to her before she becomes twenty-one. Neither of these possibilities (i.e., discrimination against the other children in this regard or competition with the mother) has any support in the will.

In item 6, for example, there is a gift over if any child (or children) of John Ray (*i.e.*, Sandra Jean) die before she becomes twenty-one or does not leave any child or children surviving, to surviving brothers and sisters (*i.e.*, to brothers or sisters of Sandra Jean, except Ramona). Since the "interest of such deceased child or children" (*i.e.*, of Sandra Jean) is not to go to her surviving brothers and sisters if she has a child or children surviving, there is the implication that if there *is* a child or children surviving, such child or children will take the parent's share. This gift to a surviving child or children can be found in a proper construction of item 2(e)—that is, a construction

which would make the gift to Sandra Jean's children come into effect only if Sandra Jean dies prior to becoming twenty-one leaving a child or children surviving. In such a way, the two provisions are reconciled.

Thus, we are of the opinion that if Sandra Jean becomes twenty-one, she alone is entitled to the property. If, however, she dies before becoming twenty-one, but leaves a child or children surviving, they are to receive the property. No purpose would be served by further discussion regarding whether, for example, Sandra Jean technically has a contingent interest which vests when she becomes twenty-one, or a vested interest which is divested if she dies before attaining that age. The important question is to determine, from the will, what disposition is to be made of the property (*i.e.*, distribution of the trust personalty and vesting in possession of the trust realty) upon the occurrence of various contingencies. The labeling of the interests becomes unimportant when the devolution of the property is thus spelled out.

There is, then, one additional possibility, Sandra Jean dying prior to becoming twenty-one and not leaving any child or children surviving.

In such case, the appellee urges, Sandra Jean's heirs or devisees would take. This is based on the proposition that the property vested indefeasibly in her when Ramona, her sister, became twenty-one. A proper construction of item 2(e), it is asserted, gives Sandra Jean a vested interest, which would be divested only by the gifts over in item 6 coming into effect. Since neither of these gifts can become effective, the divesting condition can never occur and Sandra Jean can never lose the fee interest thus vested in her. This, of course, was subject to the qualification previously mentioned regarding the partial divestiture to let in children born to her prior to her becoming twenty-one.

However, there is nothing to indicate any relationship between Ramona becoming twenty-one and the indefeasible

vesting of the trust property in the other children of John Ray (item 2-e). For Ramona is not a part of the designated class in item 2(e), and her becoming twenty-one would not appear to have that effect upon the interests therein created. On the contrary, the testatrix has shown, at least by implication, that if the entire Sayre line (other than Ramona) runs out before the distribution is made, Ramona is to receive the property. Such result, indeed, would follow from appellee's argument that item 3 is residuary in nature and designed to encompass any situations not expressly provided for. In addition, the second gift over in item 6 to the Homes, dealing as it does with all of the testatrix's property, is to come into effect only if *all* of John Ray's children die prior to becoming twenty-one, leaving no child or children surviving, "preventing the vesting of said property." It would appear, then, that if at the time for distribution, any child of John Ray is still living and eligible to take (or, has become twenty-one or left a child or children surviving) that child is to take. Ramona meets these specifications, and if she is at the time for distribution the only remaining person in the Sayre line, it is clear that the testatrix wished her to have the property.

Therefore, if Sandra Jean dies before becoming twenty-one and does not leave a child or children surviving, the property is to go to Ramona, or if she be dead, to her heirs or devisees.

This will, which purports to provide a complete and rather complicated plan for distributing the estate, certainly was not drafted with skill and precision. Still, as we have sought to demonstrate, it is possible, from a consideration of the will in its entirety, to arrive at a construction which harmonizes the various provisions and effectuates the probable intention of the testatrix expressed therein.

In so construing the will, we have refrained, as did the trial court, from considering appellants' proferred evi-

dence regarding oral instructions which the testatrix is said to have given the attorney who drafted the will. Appellants asked to introduce testimony showing that the testatrix told her attorney she wished Ramona to receive the property devised to her by item 4 and in addition to share equally with other children of John Ray in the remaining property. Appellants, while conceding there is no latent ambiguity in the will, contend that "no better evidence of a testator's intention can be imagined than that which proceeds from the lips of the testator himself, and on such a solemn occasion." With excellent reason, however, courts have refused to consider such evidence which has the effect of varying the terms of the writing or showing an intention not expressed therein. (See *Dahmer* v. *Wensler,* 350 Ill. 23; *Dollander* v. *Dhaemers,* 297 Ill. 274; *Alford* v. *Bennett,* 279 Ill. 375; *Noble* v. *Fickes,* 230 Ill. 594; *Hawhe* v. *Chicago and West Indiana Railroad Co.* 165 Ill. 561; *Harris* v. *Harris,* 223 Ill. App. 406.) However much it might be desired to solve a difficult will construction problem by resort to such extrinsic evidence, courts have recognized that in most instances such hope would be illusory, avenues of fraud and perjury would be opened, and the statutory requirement that a will be in writing would be disregarded. In interpreting a will the basic question is not what the testator actually intended or meant to write but what the words used mean—not what intention existed in his mind, but what is expressed by the language of his will. Cf. *Lomax* v. *Lomax,* 218 Ill. 629; *Engelthaler* v. *Engelthaler,* 196 Ill. 230.

We have, however, considered other circumstances surrounding the testatrix when she executed the will in 1938, such as her relationship to the beneficiaries of the will, the nature of her property, etc.; but there is no evidence which casts any significant light upon the case or even tends to detract from the construction we have adopted. While it is apparently true that the testatrix was fond of Ramona

(Ramona having lived with the testatrix from the date of her parents' separation in 1927 until shortly after her mother's remarriage in 1932), the will itself does not indicate the contrary. For Ramona, who was thirteen years old when the will was executed and was not an heir of the testatrix, was given the income from a one-hundred acre farm at once, together with the fee interest when she became twenty-one. Moreover, at the time the will was executed the testatrix did not know how many other children of John Ray there would be to claim a share of the trust property devised in item 2(e), nor did she know how long it would be before any of said children would receive any income therefrom.

Finally, appellants argue that the will violates the rule against perpetuities. But the interests created here are bound to vest within the life of John Ray (the life in being) and twenty-one years plus the period of gestation. Therefore, neither the rule against perpetuities nor the kindred rule applying to equitable interests was violated. (Cf. *McKibben* v. *Pioneer Trust & Savings Bank*, 365 Ill. 369; *Chicago Title and Trust Co.* v. *Shellaberger*, 399 Ill. 320.) Actually, the interests would vest in possession, as well as title, within the permissible time limits.

The decree of the trial court is affirmed in part and reversed in part. The cause is remanded with directions to enter a decree in conformity with this opinion.

*Affirmed in part and reversed in part and remanded, with directions.*