*In re* Estate of SOPHIE LINK, Deceased—(Appeal of THE CATHOLIC BISHOP OF CHICAGO, Petitioner-Appellant.)

(No. 70-207; )

Second District—June 16, 1971.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, (John E. Angle, of counsel,) for appellant.

John F. Grady, of Waukegan, John B. Schmidt, of Chicago, and Vail A. Van Natta, of Park Ridge, for appellee.

Mr. JUSTICE KRAUSE delivered the opinion of the court:

The Petitioner-Appellant, the Catholic Bishop of Chicago (hereinafter referred to as "Catholic Bishop") prosecutes this appeal from an order denying two petitions of the Catholic Bishop.

The first petition asked the court to enter an order construing certain language to limit the Executor's authorization to sell real property, and the second petition, to allow the Catholic Bishop to deposit with the Court sufficient sums to pay certain legacies and costs, thus rendering unnecessary the sale of any real property.

Sophie Link died testate August 15, 1968. Her estate was valued at some $100,000 in personal property, and $448,000 (estimated) in real estate at the time the estate was opened.

After providing that her funeral expenses, costs of administration and taxes be paid the testatrix provided certain specific bequests. The rest and residue of her estate was then divided and bequeathed "* * * to, poor needy domestic and foreign Catholic Missions * * *"

The testatrix further provided that "* * * my Executor consult with the Cardinal Archbishop of Chicago, Illinois and accept his recommendation as to the domestic and foreign Catholic Missions * * *"

The bulk of the estate consists of 65 acres of land situated in Lake County that all parties agree was valuable at the time of death, and further agree that it has appreciated in value significantly since that time.

The issue in the case centers around the Executor's authorization to sell aforesaid real estate. The authority is set out in two particular Articles of the Will as set forth below:

"SECOND: I direct that my Executor, hereinafter named, pay out of my general estate all inheritance, estate and succession taxes which may be levied or assessed on my estate, or levied or assessed on or because of any and all legacies, gifts, devises and annuities given by this Will or

levied or assessed on or because of any other transfer or transfers at any time made by me, or on or because of any insurance on my life, or on or because of the exercise by me of any power of appointment. I authorize and empower said Executor to sell all or any part of my real or personal estate at public auction or by private sale, for cash or on credit, or partly for cash and partly on credit, and to execute and deliver all good and sufficient deeds, bills of sale, instruments of transfer and any and all other writings necessary or proper to convey and transfer the property so sold. I direct that the receipts of my said Executor, for the purchase money and proceeds of any property herein authorized to be sold, or for any money or for any property of any kind, paid or transferred to them, shall fully discharge the person or persons so purchasing the property so sold, or so paying said monies or so transferring said other property therefrom and from being bound to see to the application or being answerable for the loss or misapplication thereof."

"*TWENTY-FOURTH:* I order and direct that my Executors, in the event that it is necessary to sell any real estate which I may own at the time of my death, first offer to my niece, MARY SUSAN DIDIER and HERBERT DIDIER, her husband, the opportunity to purchase said real estate at a price of ONE HUNDRED ($100.00) DOLLARS per acre less than the appraised value per acre of said real estate at the time of my death. They shall have forty (40) days from the date it is offered to them to accept said offer."

Mary Susan Didier is the only next of kin of the testatrix and, with her husband, Herbert Didier, except for purposes of this matter, is a co-executor with the Wheeling Trust and Savings Bank (hereinafter referred to as "Wheeling Bank"). All are Respondent-Appellees herein, the Wheeling Bank as Executor and the Didiers individually.

The Catholic Bishop maintains that the Executor can sell the real estate only if necessary to provide monies for legacies and debts. Inasmuch as Article Second did not limit the power of sale, clearly it was the power to sell "* * * all or any part * * *" As in *Heyne v. Scheffauer* (1926), 321 Ill. 266, 272, where a similar power of sale was considered, our Supreme Court said: "The power to sell and convey real estate is not by the language of the will limited to a sale made necessary to pay claims or legacies. To administer his estate the testator vested broad powers and ample discretion in the executor."

■■ To apply the *Heyne* case to the instant case, the testatrix can be said to have provided a broad and independent power of sale to the Executor not only to pay legatees and debts, but also in the absolute discretion of the Executor to accomplish any other purpose, including but not limited to the distribution to numerous specific legatees and

as yet unnamed "* * * poor needy domestic and foreign Catholic Missions * * *"

Further, the Catholic Bishop contends that the word "necessary" in Article Twenty-Fourth limits the power of sale authorized and empowered by Article Second. We do not believe that it contributes to the solution of this case to add further to the already numerous interpretations of the words "necessary" or "any" as suggested by the Catholic Bishop.

■■ If there is a conflict or inconsistency between Article Second and Article Twenty-Fourth it is for the trial court to reconcile them. *Peters v. Gebhardt* (1955), 6 Ill.2d 534, 540, 129 N.E.2d 731, 735.

■■ The primary intention of both Articles can be reconciled by fulfilling the testatrix's desire to give the Didiers something of value. The Will states "opportunity", and an opportunity to purchase real estate is an option. *Daly v. Daly* (1921), 299 Ill. 268, 274.

■■ Mary Susan Didier as only next of kin is the natural object of the testatrix's bounty. Clearly there should be no situation that would nullify the right to purchase given the Didiers in Article Twenty-Fourth whether there be a deficiency or not. Thus with the parties admitting that the property has appreciated in value since the time of death, the Didiers should be able to accrue a substantial profit by a purchase and subsequent sale of the property.

Under Article Second the Executor has a broad discretionary power to sell the real estate, and under Article Twenty-Fourth the Didiers have the "opportunity" to buy the real estate. This Sophie Link, the testatrix herein, intended.

Further, this construction does not nullify the testatrix's desire and intention to benefit her specific or residuary legatees.

Accordingly, the judgment of the Circuit Court for the 19th Judicial Circuit, Lake County, is affirmed.

Judgment affirmed.

T. MORAN, P. J., and ABRAHAMSON, J., concur.