107 Ill. App.3d 1038 (1982)
438 N.E.2d 553
In re ESTATE OF ALEXANDER SMITH, Deceased.  (GEORGE R. SMITH et al., Plaintiffs and Petitioners-Appellants,
v.
ALFRED PATERSON, a/k/a Alfred Patterson et al., Defendants and Respondents-Appellees.)
No. 81-2211.
Illinois Appellate Court  First District (2nd Division).
Opinion filed June 29, 1982.
*1039 Francis B. Stine and Marvin E. Beckman, both of Chicago, for appellants.
McLaughlin, Kinser & Bryant, of Chicago (Harry L. Kinser and Edward J. McLaughlin, of counsel), for appellee George S. Lyon.
Mary Ann Hartwick, of Overholser, Flannery & Hoover, of Libertyville, for appellees Juanetta Turner, George Smith, and Janet Croonborg.
Reversed and remanded.
JUSTICE HARTMAN delivered the opinion of the court:
Alexander Smith ("Alexander" or "testator") died on July 14, 1980, leaving no children or surviving wife. His will, drawn on May 22, 1979, was admitted to probate on October 8, 1980. In supplementary proceedings, plaintiffs, certain of the testator's nieces and nephews, filed a two-count petition, the first seeking a construction of the will, and the second seeking to set aside admission of the will to probate as alternative relief. Following argument on a motion to dismiss, count I was dismissed. A motion for rehearing was also denied. Both orders contain appropriate Supreme Court Rule 304(a) (73 Ill.2d R. 304(a)) language. It is from the dismissal of count I and denial of the post-trial motion that plaintiffs appeal.
Alexander had two brothers, George Smith (George) and John Smith (John), as well as a sister, Mary Lyon (Mary), each of whom were designated legatees under Alexander's will. John died on July 4, 1978, about 11 months prior to the making of Alexander's will. George and Mary died after Alexander's death. Alexander also had three other sisters *1040 who predeceased him, none of whom are mentioned in Alexander's will, nor their survivors.
Plaintiffs are the heirs, children and widow, of John. Defendants, inter alios, are: George Lyon, individually and as executor of the estate of Mary; and Juanetta Turner, George Smith and Janet Croonborg, the children of George.
The issue raised is whether the circuit court erred in finding no ambiguity in the terms of the will so as to allow the admission of extrinsic evidence.
Alexander's will, attached to plaintiffs' petition as Exhibit A, provides, inter alia:
"THIRD: All the residue of my estate, wherever situated, including lapsed legacies and devises, but expressly excluding any property over which I may have power of appointment at my death, I give to the following named individuals in equal shares, share and share alike, or to the survivor of them:

TO  GEORGE SMITH, my brother
TO  JOHN SMITH, my brother
TO  MARY LYON, my sister." (Emphasis added.)
Plaintiffs allege that when Alexander executed his will on May 22, 1979, John's death on July 4, 1978, was well known to him, having attended John's funeral and having discussed his passing with others. Plaintiffs' petition further maintains that at all relevant times, it was the testator's intention that John's survivors, themselves, inherit one-third of the residue of Alexander's estate. Plaintiffs assert that the will is susceptible to different interpretations; however, they have not been included as legatees under the will in the executor Pioneer Bank's application for "letters." Plaintiffs pray that the court construe the will and declare it was the intention of the testator that they take one-third of the residue of the estate.
Defendant George S. Lyon, individually and as executor-dative of the estate of Mary Lyon, deceased,[1] and defendants Juanetta Turner, George Smith and Janet Croonborg (Turner), brought motions to dismiss the petition on the grounds that because the will is clear and unambiguous, circumstances surrounding the creation of the will should therefore not be introduced to create a different intention than that therein expressed. In plaintiffs' memoranda, they interpret "survivor of them" so to allow them to take John's share and claim that the naming in the will of a dead person created an ambiguity sufficient to allow evidence of circumstances surrounding execution thereof. Defendants argue that such phrase must *1041 be considered to mean that the survivor or survivors of the three legatees listed, i.e., George, John or Mary, should take. Also within their memoranda, plaintiffs offer to prove that: the testator had only a "common school education"; he was a riveter all his life; he, John and John's family (plaintiffs) were very close; and, after John's death, the testator gave John, Jr., the key to his "safety box" and a copy of his will.
After the circuit court granted defendants' motion to dismiss count I of the petition to construe the will, plaintiffs moved for a rehearing and offered additional proof, to wit, that: the testator had three sisters who predeceased the making of the will, each leaving survivors, who were not mentioned in the will; Herbert Schnitzer, an attorney and trust officer of Pioneer Bank & Trust Co., was asked by the testator on May 22, 1979, to retype an old will of his upon which instrument the testator had made changes by hand; Schnitzer had his secretary retype the old will, which was subsequently executed by the testator; and Schnitzer did not give the testator legal advice regarding the will. The motion for rehearing and offer of proof were denied. The original will, apparently, could not be found.
Plaintiffs concede on appeal that the phrase "the survivor of them" normally has a settled legal meaning, namely, the last living person or persons of those named. They contend in the instant case, however, that extrinsic evidence should be admitted which would show that an ambiguity exists that should be resolved in their favor. The ambiguity for which they contend is that because John was known by Alexander to have died when he executed his will, it is unlikely that the testator meant the phrase to have the settled legal definition since John could not, perforce, be a "survivor" under that definition. Plaintiffs maintain that the testator thus meant for John's survivors, his wife and children, to take under the will. Plaintiffs rely upon In re Barr's Estate (1846), 2 Pa. 428.
In In re Barr's Estate, the testator left the residue of his estate "equally divided among my brothers and sisters, which I shall hereinafter mention, or their survivors." Seven brothers and sisters were then listed, of which three were dead when the will was executed. They had died in the village in which the testator resided, and he knew of their deaths when he made his will. The question was whether the issue of the deceased brothers and sisters would take under the will. The Pennsylvania court, acknowledging that "in a strict legal sense, the word survivor means the longest liver of two joint-tenants, or of any two persons joined in the right of a thing; he that remains alive after that the other be dead" (2 Pa. St. 428, 431), nevertheless held that the heirs should take their parents' shares. The court looked to the testator's intentions, which it inferred from the facts. It noted that the will was "evidently" written by someone unfamiliar with legal terminology, and the testator knew some of his siblings were dead *1042 and that they had families. The court also appears to have relied on the fact that elsewhere in the will the testator used the word "survivor" to mean "successor", to wit: "* * * he nominates Thomas Houston * * * or the survivor of him, to be his executor." (2 Pa. 428, 430, 431.) Plaintiffs argue from the foregoing that in the instant case, "or the survivor of them" should be interpreted in the same manner as "or their survivors" was interpreted in In re Barr's Estate.
Plaintiffs also rely upon certain language in the second clause of the instant will, which provides:
 "SECOND: (a) I give ONE THOUSAND DOLLARS ($1,000.00)
 to my deceased wife's niece, BRENDA
 WINKWORTH, if she survives me;
 (b) I give ONE THOUSAND DOLLARS ($1,000.00)
 to my deceased wife's niece, PEGGY
 DENNINGTON, if she survives me;
 (c) I give FIVE THOUSAND DOLLARS
 ($5,000.00) to my brother, GEORGE SMITH,
 if he survives me;
 (d) I give FIVE THOUSAND DOLLARS
 ($5,000.00) to my sister, MARY LYON, if
 she survives me." (Emphasis added.)
The foregoing bequests and language reveal that where "if she [or he] survives me" is the language used, no ambiguity exists, in contrast to "or the survivor of them." (Emphasis added.) Further, if Alexander intended that only Mary and George should "share and share alike," it would have been unnecessary for him to have made additional specific bequests to them of $5,000 each, since each would have received that same $5,000 as residuary legatees. They conclude, therefore, that the testator's intent was to give Mary and George $5,000 more than John's wife and children under the residuary clause.
The cardinal rule of will construction, to which all other rules yield, is the ascertainment of a testator's intention from the will itself. (Vollmer v. McGowan (1951), 409 Ill. 306, 99 N.E.2d 337.) That intention must be drawn from the will language where it has a settled legal meaning; in the absence of an ambiguity or uncertainty, surrounding circumstances may not be considered so as to impart a meaning other than that expressed in the will. (Mitchell v. Snyder (1949), 402 Ill. 279, 83 N.E.2d 680.) The intention of the testator is determined by ascertaining the actual meaning of the words used in the will before applying the rules of construction. (Hoge v. Hoge (1959), 17 Ill.2d 209, 161 N.E.2d 117.) Applying the *1043 foregoing rules, the will at bar reveals an ambiguity which necessitates inquiry beyond the four corners of the will itself, namely, the provisions of the second and third clauses when read together.
 1 In the third clause, John is named a residuary legatee along with brother George and sister Mary, although Alexander knew that John had died almost 11 months prior to the time the will was written, having attended his funeral. In the second clause, specific bequests of $5,000 were made to George and Mary, in addition to two of Alexander's wife's nieces, if they survive him. Since George and Mary as residuary legatees would have inherited the $5,000 that each was specifically given, the reason for the language "or to the survivor of them," as applied to John, who was already dead at the time the will was written, creates an ambiguity which must be resolved in order to ascertain the true intent of Alexander. Plaintiffs suggest that the language could have been utilized for only two reasons: mistake or deliberate use to convey a different meaning because it would not be rational to think Alexander would name a dead person. Defendants submit still other possible reasons: that Alexander's prior will contained language which he found to be ambiguous and which he sought to correct; and that there was no need to change the language in order to permit the surviving brother and sister to take thereunder.
The fact that Alexander, according to plaintiffs' offer of proof, took his original will, apparently drafted by a lawyer, amended and interlined some of the language and had it retyped by one of the bank's employees with no legal advice given in regard to the changes, supports the thesis that Alexander may have written into his will language which did not truly express his intent, or may have left language earlier expressing an intent in the original will, which could not have been executed under the circumstances present at the time the will was written. "Or the survivor of them," to a layman unschooled in "legalese," could mean those persons surviving the individuals named as well as the settled legal meaning that only those named could be considered survivors. (Finnerty v. Neary (1956), 9 Ill.2d 495, 503, 138 N.E.2d 540; In re Barr's Estate.) The original will, not having been found, can be of no assistance. Whether, in copying the legal terminology in the original will, Alexander intended the legal meaning or lay meaning of those words, cannot be deemed clear and unambiguous within the milieu in which they are found. An inquiry into the surrounding circumstances should have been undertaken in order to ascertain Alexander's true intent. See, e.g., Caracci v. Lillard (1955), 7 Ill.2d 382, 387-88, 130 N.E.2d 514; Appleton v. Rea (1945), 389 Ill. 222, 227-28, 58 N.E.2d 854; In re Estate of Russell (1968), 69 Cal.2d 200, 208-09, 444 P.2d 353, 359, 70 Cal. Rptr. 561, 567.
Defendants rely upon Waugh v. Poiron (1942), 315 Ill. App. 78, 42 *1044 N.E.2d 138, and In re Estate of Carlson (1976), 39 Ill. App.3d 281, 350 N.E.2d 306, to support their contention that the phrase "or to the survivor of them" has a clear and unambiguous meaning. In Waugh the testator devised the residue of her estate to her brother, two sisters and a niece, "share and share alike, and to the survivor of them." Unlike the facts in the case sub judice, the brother and two sisters died after the will was executed, but prior to the death of the testator. As in the instant case, the children of the deceased legatees argued they were entitled to what would have been their parents' share of the estate had they been alive at the time of the decease of the testator. The appellate court ruled that where language in a will is unambiguous, no evidence need be taken, and that none was taken or offered in that case. The court declared that "survivor of them" signified "the longest liver of two or more persons," or the niece, who lived longer than the other three legatees and was the only one living when the testator died. In further support of its decision, the court observed that the will on its face bore evidence that it was prepared by a lawyer, and that every paragraph thereof showed careful discrimination as to the blood relatives of the testator. As plaintiffs contend, the Waugh court cited and distinguished In re Barr's Estate thus (315 Ill. App. 78, 83): "This case is far different. This will is not clumsily drawn. It bears on its face proof that the draftsman knew legal terminology. It makes no bequests to people dead at the time of its execution." (Emphasis added.)
In In re Estate of Carlson the facts are significantly similar to Waugh, except that in Carlson a gift of the residue of the estate was made to the testator's niece and nephew and nephew of his wife, "or their survivors or survivor, share and share alike." The appellate court held this language was unambiguous and had the same meaning as "survivor of them" had in Waugh; therefore, the child of a nephew deceased at the testator's death was not entitled to the nephew's share. No designated legatee was deceased in In re Estate of Carlson at the time the will was written, as is the case in the present will.
 2, 3 Defendant Lyon argues that section 4-11(b) of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110 1/2, par. 4-11(b)) supports affirmance, as it provides that if a gift has been made to a class, the members of the class living when the legacy took effect take a deceased member's share. A gift made to named beneficiaries, particularly when devised in equal shares, as in this case, is prima facie a gift to them as individuals, notwithstanding their designation in general terms by their relationship to the testator, and is not regarded as a class gift. (See O'Connell v. Gaffney (1962), 23 Ill.2d 611, 616-17, 179 N.E.2d 647.) Further, as plaintiffs argue, the gift in question could not have been intended as a class gift, because one of the named class members, John, was already dead when named in *1045 the will. The class then would have consisted only of George and Mary. The antilapse provisions would not then apply since Alexander had already provided for the contingency of the death of one or more of the beneficiaries. In Waugh, the court noted that the bequest at issue there also was not a class gift on similar grounds. Waugh v. Poiron (1942), 315 Ill. App. 78, 82.
For the reasons set forth above, the judgment of the circuit court dismissing count I of plaintiffs' petition must be reversed and the cause remanded with directions to reinstate said count and consider such evidence as may be adduced by the parties in support of their respective positions.
Reversed and remanded.
STAMOS, P.J., and PERLIN, J., concur.
NOTES
[1] According to plaintiffs, Mary Lyon died August 5, 1980, and George Smith died August 18, 1980.