*In re* ESTATE OF VIOLA ROSTA, a/k/a Theresa Rosta, Deceased.—(Gerard E. Dempsey, Ex'r of the Estate of Viola Rosta, Petitioner-Appellee and Cross-Appellant, *v.* Ruth Holsen *et al.*, Respondents—Frank R. Hladnik *et al.*, Respondents-Appellants and Cross-Appellees.)

First District (2nd Division)   No. 81—3191

Opinion filed December 28, 1982.

Clarence J. Jadrich, Larry S. Kajfes, Ltd., and Theodore C. Weinberg, all of Chicago (Stanley Werdell, of French Lick, Indiana, of counsel), for appellants.

Klein, Thorpe and Jenkins, Ltd., of Chicago (Gerard E. Dempsey, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Viola Rosta, also known as Theresa Rosta, died testate on April 20, 1980, leaving an estate of $670,903.36. The estate consists of both probate and nonprobate assets. The nonprobate assets, a joint tenancy savings account and 18 Totten Trust accounts, amount to $368,594.18. The joint tenant in the savings account was Thomas J. Anderson; the beneficiaries of the Totten Trust accounts were Anderson, Frank R. Hladnik, Katherine M. Hladnik, Carol L. Hladnik, Ruth Holsen, decedent's niece, and Ruth's mother, Helen Holsen, decedent's sister-in-law. The probate assets amount to $302,309.18. In her will, decedent provided legacies of $35,000 to Laszlone Rosta, another sister-in-law;

$24,432.95 to Helen Holsen; and $2,000 to the pastor of a church. Testatrix directed that the residue be paid in equal shares to Helen Holsen and Ralph Holsen, a nephew. Gerard Dempsey was named as executor.

The principal issue in this appeal concerns the ultimate burden of the Federal estate taxes assessed against the estate. These taxes amount to $149,952.14. The executor petitioned the trial court for an order requiring equitable apportionment of the Federal estate tax liability between probate and nonprobate assets. The petition named all of the nonprobate beneficiaries as respondents and indicated their respective shares. The court ordered the executor to serve copies of the petition together with summons upon each of the nonprobate beneficiaries. Summons was issued to the Hladniks and Richard Anderson, the personal representative of the estate of Thomas J. Anderson, deceased. No summons was served on Ruth Holsen or Helen Holsen, two of the nonprobate beneficiaries, or on Ralph Holsen, a residuary legatee.

In their answers opposing the executor's petition, respondents argued that in sections I and VI of her will, testatrix had manifested an intent to preclude equitable apportionment. Section I states: "I direct that all of my just debts, funeral expenses and any other proper charges against my estate be paid in due course during the administration of my estate." Section VI provides: "If at the time of my decease I have any bank or other savings account, which is in joint tenancy with myself and another person, such account shall not be considered an asset of my estate, but shall pass to such other person as surviving joint tenant." In seeking to establish the intent of the testatrix, respondents also relied on certain letters (designated as respondents' exhibits B, C and D) which the scrivener of the will, Gerard Dempsey (the executor herein), sent to the testatrix in the course of preparing her will. Following receipt of the answers, the executor moved for summary judgment on the issue of equitable apportionment and moved to strike respondents' exhibits B, C and D. The trial court denied these motions.

The trial court held that Illinois law requires equitable apportionment of the Federal estate tax burden between probate and nonprobate assets of an estate unless the decedent has directed otherwise. The court found that no such direction was expressed in the testatrix' will. The court also found that the letters written by the scrivener to the testatrix did not impart to the will any direction or intent on the testatrix' part that her nonprobate assets should not bear their proportionate share of the Federal estate tax liability. Accordingly, the

court ordered the Hladniks and Richard Anderson, the personal representative of Thomas J. Anderson, deceased, to pay to the executor that portion of the Federal estate tax liability which was generated by the value of the assets each had received. Specifically, Frank R. Hladnik was ordered to pay $4,789.02; Katherine M. Hladnik and Carol L. Hladnik were each ordered to pay $3,575.89; and the estate of Thomas J. Anderson was ordered to pay $25,904.72.

Respondents have appealed the trial court's order requiring equitable apportionment. The executor has cross-appealed the court's denial of his motion for summary judgment and his motion to strike respondents' exhibits. We will address respondents' arguments first.

I

Respondents initially contend that the trial court's order was void because the court lacked jurisdiction over three indispensable parties: Ruth Holsen, a nonprobate beneficiary; Helen Holsen, another nonprobate beneficiary who is also a specific legatee and one of the two residuary legatees; and Ralph Holsen, the other residuary legatee. Petitioner (the executor) concedes that the court lacked jurisdiction over these persons but disputes whether they were indispensable parties.

■ In the view we take of this issue, it is unnecessary to determine whether these parties were indispensable. While an order entered without jurisdiction over an indispensable party is null and void (*People ex rel. Meyer v. Kerner* (1966), 35 Ill. 2d 33, 38, 219 N.E.2d 617), an exception to this ordinarily inflexible rule has been developed in the "doctrine of representation." (*Tri-Mor Bowl, Inc. v. Brunswick Corp.* (1977), 51 Ill. App. 3d 743, 747, 366 N.E.2d 941.) Under this doctrine, the rule requiring joinder of indispensable parties is not applied when a party, though not before the court in person, is so represented by others that his interest receives actual and efficient protection. This so-called "doctrine of representation" applies where persons are before the court who have the same interests and will be equally certain to bring them forward and protect them, as those of persons not before the court. *Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 158, 362 N.E.2d 382, and see also the authorities cited therein.

■ The executor in this cause petitioned the trial court for an order requiring equitable apportionment of the Federal estate tax burden between probate and nonprobate assets. The effect of such an order is to enhance the value of the residuary estate. It is apparent, therefore, that the executor has the same interests as Ralph Holsen and Helen Holsen, the residuary legatees, and has protected those in-

terests by virtue of his petition for equitable apportionment.[1] (See *Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 158, 362 N.E.2d 382, where the court observed that the doctrine of representation has been most frequently applied in cases holding that the executor is an adequate representative of the beneficiaries under a will.) Respondents are nonprobate beneficiaries who have opposed the executor's petition for equitable apportionment. Their interests are identical with those of Ruth Holsen, who is also a nonprobate beneficiary. In light of these facts, we conclude that the doctrine of representation is applicable in this case.[2] For that reason, the failure of the trial court to obtain jurisdiction over the Holsens does not render the court's order void.

## II

■ Respondents next contend that nonprobate assets in a testate estate need not bear their proportionate share of the Federal estate tax burden when the probate assets are sufficient to pay all of the Federal estate taxes, all of the decedent's debts and costs of administration, and all general and specific legacies, and there is a "substantial balance" left for distribution to the residuary legatees. Respondents characterize this as a case of first impression. The executor replies that respondents' argument ignores the rationale of the equitable apportionment rule, *i.e.*, that it is unfair to require probate assets to pay the Federal estate taxes generated by nonprobate transfers.

The equitable apportionment doctrine[3] was first applied in Illinois in *In re Estate of Van Duser* (1974), 19 Ill. App. 3d 1022, 313 N.E.2d 228. In *Van Duser*, the decedent died intestate, leaving a gross probate estate of approximately $65,000. In addition, there was approximately $170,000 in joint tenancy property which was not part of the probate estate but was included in decedent's estate for purposes of determining the Federal estate tax liability. The total Federal estate tax on decedent's estate was $39,667 of which $30,623 (or 77.2% of the tax liability) was generated by the property passing in joint ten-

---

[1] Helen Holsen is also a nonprobate beneficiary. Because of the relatively small amount of nonprobate assets she has received, however, Helen would benefit from equitable apportionment.

[2] It is immaterial, therefore, whether Ruth Holsen and Helen Holsen, as nonprobate beneficiaries, have consented to an apportionment of the Federal estate tax, as the executor has represented to this court.

[3] An excellent analysis of the development of this doctrine in Illinois may be found in Note, *In re Estate of Gowling and In re Estate of Grant: The Limits of Equitable Apportionment*, 13 Loy. Chi. L. J. 309 (1982).

ancy. One of the two heirs at law filed a motion to apportion payment of the Federal estate tax due by reason of decedent's death so that the surviving joint tenants would be directed to pay their equitable shares. This motion was allowed and two of the surviving joint tenants appealed. The question on appeal was whether the Federal estate tax was to be paid proportionately by all persons who received property from the decedent both as heirs at law and as surviving joint tenants, or whether the tax was to be paid entirely from the probate assets.

The appellate court, noting that if the tax were paid only out of the probate estate most of the entire estate would be depleted, stated that, "logic, reason, and simple justice dictate that, unless there is a contrary intention expressed by the decedent, as in a will in testate estates, the doctrine of equitable contribution should be invoked as to non-probate assets to fairly distribute the Federal estate tax burden." (*In re Estate of Van Duser* (1974), 19 Ill. App. 3d 1022, 1024.) The court concluded:

> "*** since the amount of the non-probate assets [property held in joint tenancy] was included in the gross estate in determining the amount of Federal tax liability and thus contributed to the assessment of that tax, impelling justice and fairness dictate, and equity provides, that the recipients of those assets contribute in paying the Federal estate tax proportionately to the amount of tax their share generated." 19 Ill. App. 3d 1022, 1026.

Respondents attempt to distinguish *Van Duser* from the present case "because of the great disparity between the probate and nonprobate assets, ***." We find this distinction unpersuasive. Nothing in the *Van Duser* opinion suggests that the applicability of the equitable apportionment rule depends on the relative values of the probate and nonprobate assets.

In *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662, our supreme court for the first time directly addressed the question whether an apportionment of the Federal estate tax may be allowed. In *Roe*, the decedent died intestate, leaving a probate estate of $13,848. The Federal gross estate also included $100,528 in joint tenancy property. The Federal estate tax on the combined properties was $5,340.95. The supreme court noted that although the estate tax was less than the probate estate, the total liability for the Federal estate tax, funeral expenses, debts and costs of administration amounted to $18,272.30, a sum considerably in excess of the probate estate. (69 Ill. 2d 525, 528.) The circuit court granted the administratrix' petition for equitable apportionment of the Federal estate tax burden between the probate and

joint tenancy property. The appellate court reversed and the supreme court granted the administratrix' petition for leave to appeal.

In *Roe*, the supreme court adopted the reasoning in *Van Duser* and affirmed the circuit court's judgment allowing equitable apportionment. In reaching its decision, the court also relied on J. Pomeroy's Equity Jurisprudence (5th ed. 1941):

> " '*** the most important doctrine, perhaps, which results from the principle, Equality is equity, is that of contribution among joint debtors, co-sureties, co-contractors, and all others upon whom the same pecuniary obligation arising from contract, express or implied, rests. This doctrine is evidently based upon the notion that the burden in all such cases should be equally borne by all the persons upon whom it is imposed, and its necessary effect is to equalize that burden whenever one of the parties has, in pursuance of his mere *legal* liability, paid or been compelled to pay the whole amount, or any amount greater than his proportionate share.' " 2 J. Pomeroy, Equity Jurisprudence sec. 411, at 157-58 (5th ed. 1941), cited in *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 532-33.

Contrary to respondents' argument, we find no intimation in *Roe* that the supreme court intended to limit applicability of the equitable apportionment doctrine to estates in which "the nonprobate assets greatly exceed the Federal estate taxes, funeral expenses, debts, costs of administration, as well as the probate assets." Rather, the court recognized that "[t]he nonprobate assets here generated the estate tax liability in large part, and to deny apportionment would inequitably favor the recipients of the nonprobate assets." (69 Ill. 2d 525, 531-32; see also *In re Estate of Lyons* (1981), 98 Ill. App. 3d 995, 997, 425 N.E.2d 19.) We believe that respondents' narrow interpretation of *Roe* is inconsistent with the principles of equity and fairness on which the opinion is based.

Respondents argue that *Van Duser* and *Roe* are distinguishable because both involved intestate estates. In the later case of *In re Estate of Gowling* (1980), 82 Ill. 2d 15, 411 N.E.2d 266, however, the supreme court stated that the reasoning employed in *Roe* is equally applicable in testate estates. Accordingly, the court held that "[i]n the absence of directions from the decedent, an apportionment of Federal estate tax liability must be made, regardless of whether the decedent has written a will." (82 Ill. 2d 15, 22.) The court directed that a proportionate share of the Federal estate tax liability of decedent's testate estate had to be borne by the nonprobate interests of the two remaindermen, since those interests generated a large part of the estate tax liability. (82 Ill.

2d 15, 22.) The court also held that the surviving spouse did not have to contribute to the payment of taxes when her interest generated no tax liability. The court approved of language in *Farley v. United States* (U.S. Ct. Cl. 1978), 581 F.2d 821, 834, where the Court of Claims, interpreting Illinois law, noted that *Roe* "permits or requires the equitable apportionment of the burden of federal estate taxes in accordance with the *relative values* of the property generating the taxes and the property that does not, \*\*\*." (Emphasis added.) *(Farley v. United States* (U.S. Ct. Cl. 1978), 581 F.2d 821, cited in *In re Estate of Gowling* (1980), 82 Ill. 2d 15, 23.) In light of the supreme court's analysis in *Gowling*, it is apparent that the equitable apportionment rule is not restricted to estates where it is "absolutely necessary to invade the non-probate assets to satisfy the Federal estate tax," as respondents suggest.

In *In re Estate of Fender* (1981), 96 Ill. App. 3d 1029, 1032, 422 N.E.2d 107, this court, after reviewing the supreme court's decisions in *Roe* and *Gowling*, stated that "[equitable] apportionment is now the rule in Illinois, absent a clearly manifested contrary intent in the will." Finding no such contrary intent in the will, we held that "the estate taxes levied on the instant estate are subject to apportionment among the beneficiaries of both the probate and nonprobate estates *proportionate to the sums that generated those taxes.*" (Emphasis added.) 96 Ill. App. 3d 1029, 1034.

Respondents purport to distinguish *Fender* on the grounds that in *Fender* "[t]here was a great disparity between the probate and nonprobate assets," and "the Federal estate taxes unconscionably exceeded the probate assets." In our opinion, these distinctions serve only to illustrate that respondents have misapprehended the purpose of the equitable apportionment rule, which is to fairly distribute the Federal estate tax between probate and nonprobate assets. Respondents do not dispute that the nonprobate assets they have received generated $37,045.52 of the total Federal estate tax liability of $149,952.14. We concur with the executor that it would be manifestly unfair and contrary to the equitable apportionment rule as it has been articulated in Illinois to impose upon the residuary probate estate the burden of paying $37,045.52 in Federal estate taxes that was generated by these nonprobate assets.

### III

Respondents contend in the alternative that sections I and VI of testatrix' will, when construed in light of the letters written to the testatrix by the scrivener (the executor herein), clearly manifest an intent

to preclude equitable apportionment. The executor responds that neither section evidences an intent to preclude apportionment and that the letters were inadmissible to establish such an intent.

■ In section I of her will, testatrix stated: "I direct that all of my just debts, funeral expenses and any other proper charges against my estate be paid in due course during the administration of my estate." In *In re Estate of Fender* (1981), 96 Ill. App. 3d 1029, 1031, the testator directed that "all my debts, legitimate charges against my estate, \*\*\* and the expense of the administration of my estate, including any and all taxes and legitimate claims, be paid by my executrix, \*\*\*, out of the first monies available therefor." The trial court determined that this language expressed the testator's intent that the executrix pay all taxes, including estate taxes, out of the residue. On appeal, we disagreed with this interpretation and held that the common direction that an executor pay legitimate charges against the estate cannot be construed as an order that the residue assume primary liability for all payments. (*In re Estate of Fender* (1981), 96 Ill. App. 3d 1029, 1033-34.) In reaching this conclusion, we relied in part on the appellate and supreme court opinions in *In re Estate of Gowling* (1979), 77 Ill. App. 3d 548, 396 N.E.2d 82, *aff'd* (1980), 82 Ill. 2d 15, 411 N.E.2d 266.

In *Gowling*, the will empowered the executor to "settle claims in favor of or against my estate." The trial court had reasoned that this provision implicitly indicated the testator's intention that probate assets be used to settle the Federal estate taxes, since, under section 18—10 of the Illinois Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 18—10) amounts owed the Federal government represent a class of claims that may be assessed against the estate. The supreme court rejected this reasoning, relying on *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662, where the court held that the legislative classification of claims that may be presented against an estate and the designation of priorities for their payment is "completely unrelated to the question of whether the burden of the Federal estate tax should be apportioned." (*Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 531, cited in *In re Estate of Gowling* (1979), 82 Ill. 2d 15, 19.) The court concluded that "[i]n the absence of directions from the decedent, an apportionment of the Federal estate tax liability must be made." *In re Estate of Gowling* (1979), 82 Ill. 2d 15, 22.

The appellate court's decision in *Gowling*, which was affirmed by the supreme court, also considered whether the testator's direction contravened equitable apportionment:

"The mere recital that the executor is to pay the claims of the estate seems to lack any indication of who should bear the bur-

den of estate taxes. In other jurisdictions, the simple direction in a will that the executor is to pay all just debts or obligations is not viewed as a specific direction concerning the payment of death taxes nor does it necessarily constitute a direction against apportionment. See generally Annot., 70 A.L.R.3d 630, §6[a] (1976)." *In re Estate of Gowling* (1979), 77 Ill. App. 3d 548, 551-52, 396 N.E.2d 82, *aff'd* (1980), 82 Ill. 2d 15, 411 N.E.2d 266.

Nothing in *In re Estate of Grant* (1980), 83 Ill. 2d 379, 415 N.E.2d 416, cited by respondents, dictates a contrary result. In *Grant*, the supreme court held that the Federal estate tax must be computed prior to any marital deduction if the surviving spouse takes a statutory share by renouncing the will. The court based its decision on an analysis of section 2—8(a) of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 2—8(a)), which provides that if a will is renounced by the testator's surviving spouse, the surviving spouse is entitled to one-third of the entire estate if the testator leaves a descendant, or one-half of the entire estate if the testator leaves no descendant, *after payment of all just claims*. Since the Federal estate tax constitutes a claim against the estate, the supreme court concluded that under section 2—8(a) of the Probate Act, the surviving spouse's share upon renunciation cannot be relieved of the burden of the tax. (*In re Estate of Grant* (1980), 83 Ill. 2d 379, 387.) In *Grant*, the supreme court interpreted a statutory provision not involved in the present case. In our opinion, section I of the testatrix' will does not manifest an intent to preclude apportionment.

■ Section VI of testatrix' will provides: "If at the time of my decease I have any bank or other savings account, which is in joint tenancy with myself and another person, such account shall not be considered an asset of my estate, but shall pass to such other person as surviving joint tenant." Respondents contend that in this section of her will, testatrix manifested a donative intent to give the joint tenancy assets unencumbered by liability for Federal estate taxes. A similar contention was rejected by the supreme court in *In re Estate of Gowling* (1980), 82 Ill. 2d 15, 411 N.E.2d 266.

In *Gowling*, the testator and his spouse deeded two parcels of farm property to his daughter and his grandson, reserving life estates for themselves. Testator was predeceased by his first spouse. In his will, he recited that he had previously conveyed his farms to his daughter and grandson, reserving a life estate, and provided that the crops growing or harvested on the land deeded to the remaindermen but on which testator's share had not been paid, should not be included in his estate and should belong to the remaindermen. In the supreme court, the re-

maindermen argued that the deeds by which they took their interests evidenced a donative intent on the part of the testator and his wife at that time that there should be no encumbrances such as Federal estate taxes on the remainder interests thereby taken. The supreme court, noting that in making this argument the remaindermen did not rely on any particular language in the deeds themselves, held that "the act of testator in executing the deeds does not alone support the argument made." *In re Estate of Gowling* (1980), 82 Ill. 2d 15, 25.

Similarly, in the case at bar, the mere fact that testatrix established joint tenancies and directed that they not be considered assets of her estate, does not manifest an intent that the surviving joint tenants were to be exonerated from paying their proportionate share of the Federal estate tax burden. *In re Estate of Gowling.*

Respondents maintain, however, that sections I and VI of testatrix' will must be interpreted in light of the letters which the scrivener (the executor herein) wrote to the testatrix in the course of preparing her will. These letters (respondents' exhibits B, C and D), it is argued, clearly manifest the testatrix' intent to preclude equitable apportionment. The executor responds that the letters were inadmissible and that, in any event, they do not reflect an intent on the part of the testatrix to preclude apportionment.

■ The cardinal rule of will construction, to which all other rules yield, is the ascertainment of a testator's intention from the will itself. (*In re Estate of Smith* (1982), 107 Ill. App. 3d 1038, 1042, 438 N.E.2d 553.) That intention must be drawn from the will language where it has a settled legal meaning; in the absence of an ambiguity or uncertainty, evidence of the facts and circumstances surrounding the testator when he made the will may not be considered to impart a meaning other than that expressed in the will. (*Mitchell v. Snyder* (1949), 402 Ill. 279, 284, 286, 83 N.E.2d 680; *In re Estate of Smith.*) We find no ambiguity or uncertainty in testatrix' will which would permit or require an inquiry into the circumstances surrounding its execution. We note further that proof of surrounding circumstances is never admissible for the purpose of importing into the will an intention which is not there expressed. (*Peters v. Gebhardt* (1955), 6 Ill. 2d 534, 548, 129 N.E.2d 731; *Dahmer v. Wensler* (1932), 350 Ill. 23, 30, 182 N.E. 799.) To negate apportionment, a "crystal clear" expression of testatrix' contrary intent is required. (*In re Estate of Fender* (1981), 96 Ill. App. 3d 1029, 1034, 422 N.E.2d 107, citing *Whitlow v. Thomas* (Ohio App. 1949), 54 Ohio App. 41, ___, 86 N.E.2d 622, 625.) That intent must be derived from the language of the will itself. (*In re Estate of Fender* (1981), 96 Ill. App. 3d 1029, 1032-33.) No language in this will evidences an intent to pre-

clude apportionment (we have heretofore determined that neither section I nor section VI of testatrix' will constitutes a direction against apportionment) and respondents' exhibits were inadmissible to establish such an intent. (*Appleton v. Rea* (1945), 389 Ill. 222, 226-27, 58 N.E.2d 854; *Mercantile Trust & Savings Bank v. Rogers* (1955), 5 Ill. App. 2d 162, 172, 124 N.E.2d 683; *Harris v. Harris* (1921), 223 Ill. App. 406, 409.) This conclusion makes it unnecessary to decide whether the scrivener's letters to the testatrix indicated any intention on the part of the testatrix that her nonprobate assets should not bear their proportionate share of the Federal estate tax liability.

## IV

Respondents contend further that the testatrix did not intend to treat her beneficiaries equally and that the trial court's order requiring equitable apportionment violated this intent. In support of this contention, respondents point out that testatrix disinherited eight of her 10 heirs in favor of persons who were related to her only by affinity and not by consanguinity, and that she did not divide her nonprobate assets equally among the recipients of those assets. Respondents also repeat their previous argument that sections I and VI of testatrix' will, when interpreted in light of the scrivener's letters, manifest an intent to preclude apportionment.

We believe that respondents' contention is foreclosed by our previous discussion and merely add the observation that a will cannot be reformed to conform to any intention of the testator that is not expressed therein, no matter how clearly a different intention may be proved by extrinsic evidence. (*Turek v. Mahoney* (1950), 407 Ill. 476, 481-82, 95 N.E.2d 330.) While respondents have also invoked the doctrine of gift or devise by implication, we believe that doctrine is inapplicable here.

A gift or devise may be made without any express words of gift if an intention to give clearly appears from the will as a whole. (*Connor v. Gardner* (1907), 230 Ill. 258, 268, 82 N.E. 640.) However, devises by implication have been recognized in Illinois only in very limited circumstances. Such devises can only be given effect in cases of such clear necessity that from the will itself, no reasonable doubt of the intention can exist. Probabilities as to the testator's intention cannot be weighed, but the implication must be so strong that an intention contrary to that imputed to the testator cannot be supposed to have existed in his mind. It must be such as to leave no hesitation in the mind of the court and permit no other reasonable inference. A gift by implication must be founded upon some expression in the will. It can-

not be inferred from an absolute silence on the subject. *Bradshaw v. Lewis* (1973), 54 Ill. 2d 304, 308, 296 N.E.2d 747.

An examination of the will in this cause reveals that respondents' reliance on the doctrine of devise by implication is misplaced. There is no provision in testatrix' will evincing an intent, express or implied, that respondents should receive their nonprobate assets free from the payment of their proportionate share of the Federal estate taxes.

## V

■ Finally, respondents contend that notwithstanding the adoption of equitable apportionment in Illinois, the "burden on the residue" rule remains viable and requires the residuary estate to pay all of the Federal estate taxes generated by both probate and nonprobate assets. In support of this contention, respondents rely upon *In re Estate of Maddux* (1981), 93 Ill. App. 3d 435, 417 N.E.2d 266. We believe that respondents have misread *Maddux*.

In *Maddux*, the trial court denied a petition for apportionment of Federal estate taxes, executor's fees and attorney fees among the devisees and legatees of the estate of the testatrix. The trial court ruled that the residuary estate should bear the burden of the estate taxes and fees without apportionment and two of the residuary legatees appealed. The appellate court affirmed, stating that "[w]here a will is silent as to the payment of taxes or other debts, Illinois case law requires that payment first be made from the residuary estate. (*In re Estate of Phillips* (1971), 1 Ill. App. 3d 813, 275 N.E.2d 685; *In re Estate of Fairchild* (1974), 21 Ill. App. 3d 459, 315 N.E.2d 658.) Neither *Gowling* [*In re Estate of Gowling* (1980), 82 Ill. 2d 15, 411 N.E.2d 266] nor any other case cited by the appellants has purported to apply a different rule to testate estates." *In re Estate of Maddux* (1981), 93 Ill. App. 3d 435, 436-37.

We believe it is critical to note that neither *Maddux* nor either of the authorities which it cited involved an estate with nonprobate assets. In denying apportionment among probate assets, the court in *Maddux* recognized this distinction:

> "*Gowling* implicitly approves the rule that the burden of Federal estate taxes falls on the residue. The Fourth District concluded in *Gowling* that '\*\*\* two distinct rules concerning the burden of estate tax liability may be concurrently applied with respect to a testate estate. As between the various probate assets distributed by a testator, Illinois follows the rule enunciated in *Phillips* and *Fairchild*, i.e., the burden of Federal estate taxes falls on the residuary assets. [Citations.] However, to the

extent nonprobate assets exist which generate estate tax liability contribution may be sought on a proportionate basis.' (77 Ill. App. 3d 548, 553, 396 N.E.2d 82, 86.) The supreme court did not repudiate or modify the reasoning of the Fourth District on this point and specifically affirmed the appellate court's direction that '[t]he proportionate share of tax attributable to the probate assets of the estate *** shall be borne to the extent possible by the residue ***.' 77 Ill. App. 3d 548, 554, 396 N.E.2d 82, 86." *In re Estate of Maddux* (1981), 93 Ill. App. 3d 435, 437.

We note further that in *In re Estate of Phillips* (1971), 1 Ill. App. 3d 813, 275 N.E.2d 685, which was cited in *Maddux*, the court, in denying apportionment among probate assets, specifically distinguished its holding from a situation in which nonprobate transfers have generated a portion of the Federal estate tax. *In re Estate of Phillips* (1971), 1 Ill. App. 3d 813, 816.

It is apparent from the foregoing that in the absence of a contrary direction from the decedent, where there are nonprobate assets in an estate which generate Federal estate taxes, the doctrine of equitable apportionment applies. We have heretofore determined that there was no such contrary direction expressed in testatrix' will and that the extrinsic evidence offered by respondents to establish such an intent was inadmissible. Accordingly, we find no error in the trial court's order requiring apportionment of the Federal estate taxes between probate and nonprobate assets.

## VI

In his cross-appeal, the executor contends that the trial court erred in denying his motion for summary judgment on the issue of equitable apportionment and his motion to strike respondents' exhibits. In light of our resolution of the issues presented by respondents' appeal, it is unnecessary to reach the merits of the executor's cross-appeal.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

DOWNING and HARTMAN, JJ., concur.