DONALD P. HORWITZ, Cotrustee of the Lorelei P. Ritholz Trust, *et al.*, Plaintiffs-Appellants, *v.* SYLVIA RITHOLZ, Defendant-Appellee.

First District (2nd Division)   No. 83—1451

Opinion filed June 19, 1984.

Foran, Wiss & Schultz, of Chicago (Richard G. Schultz and Jack J. Carriglio, of counsel), for appellants.

Henry W. Kenoe, of Chicago, for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Plaintiffs Donald Horwitz and Norman Newman, cotrustees of the Lorelei P. Ritholz Trust (Trust), brought an action for an accounting and distribution of the interest of the Trust in the Sylvia Ritholz Limited Partnership (Partnership). Defendant Sylvia Ritholz, general partner of the Partnership, contends that the Trust had already received a full accounting and had refused to accept its share of the final partnership distribution.

The sole asset of the Partnership consisted of an interest in a Canadian enterprise, King Optical Company, which originally was an asset of the estate of Samuel Ritholz. Samuel Ritholz, who died in 1971, was the husband of defendant and the father of Richard Ritholz and Gerald Ritholz. Samuel Ritholz' will, admitted to probate in 1971, provided that after payment of "all estate, inheritance, succession and transfer taxes, of every nature whatsoever," defendant was to be the sole beneficiary of his estate, "it being the intention hereof that the ultimate burden of all such taxes be borne by my estate."

In April 1972, defendant disclaimed 20 shares of stock in SJS Optical Ltd., a Canadian corporation which operated under the King Optical Company, "in favor of her sons, Richard Ritholz and Gerald Ritholz." Richard and Gerald accepted the stock pursuant to the disclaimer. The effect of the disclaimer was to give Richard and Gerald a partial interest in King Optical Company.

Later in 1972, the Ritholz family decided to dissolve their various Canadian corporations, including SJS Optical Ltd., and to thereafter operate under the King Optical Company Partnership. As a result, Sylvia Ritholz, together with Richard and Gerald, held a direct interest in the Canadian partnership, King Optical Company. In order to protect themselves from "possible [King Optical Company] partnership liability exposure," defendant and her two sons, Richard and Gerald, formed the Sylvia Ritholz Limited Partnership. Defendant became general partner, and Richard and Gerald were limited partners. Each of the sons contributed their respective interest in King Optical

Company to the Partnership, for which they each received a 17.857% interest in the Partnership. Defendant retained a 64.286% interest in the Partnership.

Richard Ritholz died in November 1972, and letters of trusteeship were issued under Richard's will to Donald Horwitz and Norman Newman. Under the terms of Richard's will, the Lorelei P. Ritholz Trust was established[1] and the Trust succeeded to the interest of Richard in the Partnership.

A final accounting for the Samuel Ritholz estate as entered in the circuit court of Cook County and approved by the probate court in November 1975. Pursuant to this final account, estate taxes and expenses[2] were paid by the estate. The total estate assets available after payments of taxes and expenses amounted to $379,926.44.

In 1976, Mr. John Brockhouse, accountant for defendant and for the Partnership, prepared for the windup and dissolution of the Partnership. Brockhouse reviewed the accounting methods used in the final account of Samuel Ritholz' estate because defendant was "dissatisfied with the cash which she had received" from the Samuel Ritholz estate.

In January 1977, the Partnership was dissolved. At dissolution, the cash available to the Partnership for distribution totalled $290,994. According to the ownership percentages, defendant was to receive $187,068 (64.286%), and Gerald Ritholz and the Trust were each to receive $51,963 (17.857%). Distributions in these amounts, however, were never made. Brockhouse, in analyzing the final account of Samuel Ritholz' estate and preparing for the windup of the Partnership, determined that $34,438 of the taxes and expenses paid by Samuel Ritholz' estate should be "reallocated" to the Trust's partnership in the King Optical Company. Pursuant to Brockhouse's proposed reallocation, defendant charged $34,438 against the Trust's interest in the Partnership, and retained $68,876[3] as a payment to herself for taxes and expenses previously paid by the Samuel Ritholz estate. This reallocation reduced the amount available for distribution by the Partnership to the Trust from $51,963 to $17,525.

Brockhouse forwarded his reallocation figures to Donald Horwitz and Norman Newman, trustees of the Lorelei P. Ritholz Trust, and to

[1]Lorelei is the widow of Richard.

[2]The tax expenditures were for Canadian estate and income taxes, United States estate and income taxes and Illinois inheritance taxes. The expenses were paid for court costs and fees, miscellaneous costs and additional Canadian fees.

[3]$34,436 was reallocated also against Gerald Ritholz' Partnership interest for a total adjustment of $68,876. Gerald Ritholz, however, accepted the calculations proposed by Brockhouse and is not involved in this litigation.

Mr. Joshua Kaufman, the trustees' attorney, proposing a final partnership distribution of $17,525. The plaintiffs-trustees have demanded a full accounting of the Partnership, claiming that they have received only Brockhouse's "schedules" for the Partnership dissolution. The Trust has accepted no payment from its share of the Partnership funds.

On May 12, 1977, Mr. Kaufman, the trustees' attorney, wrote a letter to Mr. Henry Kenoe, defendant's attorney, stating that the trustees "had no objection to the proposed adjustment," but that "an amendment to the final accounting of the Estate of Samuel Ritholz" would be necessary.

On December 29, 1977, apparently concerned about the personal liability of the trustees, Kaufman again demanded an indemnity agreement be signed by defendant and by Gerald Ritholz.

On April 10, 1978, Lorelei Ritholz, beneficiary of the Lorelei P. Ritholz Trust, wrote to trustee Horwitz, expressing the hope that "court proceedings are not necessary" and advising him of her desire for "a more peaceful and less expensive settlement." Lorelei even herself offered to sign the indemnification agreement.

On May 9, 1978, Horwitz wrote to defendant, advising her that Lorelei had asked him to approve the distribution proposed by Brockhouse, relying solely upon Lorelei's indemnity agreement and not requiring an indemnity agreement from defendant. Horwitz would not agree to this arrangement, fearing "personal exposure for me and my own personal estate." He again expressed his willingness to approve the distributions, but only if defendant executed an indemnification agreement to hold Horwitz "harmless, in the event the distribution proposed by you [Sylvia], with the advice of your lawyer and your accountant, proves wrong and your grandchildren become entitled to a larger distribution from the partnership."

Defendant refused to sign an indemnity agreement, and plaintiffs (trustees) thereupon brought this action for an accounting and distribution of the Partnership assets. Plaintiffs moved for summary judgment and defendant filed a cross-motion for summary judgment. Plaintiffs' motion was denied, and defendant's motion for summary judgment was granted.

Plaintiffs appeal and seek reversal of this order.

I

Plaintiffs contend that the trial court "has erred in applying equitable apportionment and in condoning the instant reallocation of Estate taxes and expenses." Plaintiffs argue that "equitable apportion-

ment is to provide the recipients of *probate* assets with a contribution from the beneficiaries of *non-probate* assets for expenses attributable to the non-probate assets"; "the doctrine [equitable apportionment] does not allow for apportionment among probate assets alone"; "the disclaimed asset [10 shares of SJS Optical Ltd.] which is owned by the Trust is a probate asset"; and the proposed apportionment in this instance "is contrary to the express language of the will of Samuel Ritholz."

Defendant argues that her "disclaimer" of "specific" shares of stock to Richard Ritholz, which transferred to the Trust upon Richard's death, was not a probate asset of Samuel Ritholz' estate, but were "simply shares of stock which represented a portion of the *equity* value of the corporation," and that defendant's disclaimer did not insulate the beneficiaries from taxes and expenses attributable to this stock.

In granting defendant's motion for summary judgment, the trial court held:

> "I'm satisfied, however, from a review of all the pleadings that this is not simply a matter of probate concern. *I believe that the cases involving equitable apportionment are appropriate to this litigation.* I believe that there are no genuine issues of material fact, and I believe that summary judgment for the defendant must be granted and summary judgment for the plaintiff denied." (Emphasis added.)

"Equitable apportionment is the term which is used to describe the process of distributing the burden of certain estate expenses among those beneficiaries in the same proportion as they respectively cause such expenses to be incurred. It is most commonly used to describe the apportionment of taxes among the beneficiaries of the estate." (2 R.S. Hunter, Estate Planning & Administration in Illinois sec. 165.1, at 617 (2d ed. 1981).) The purpose of the equitable apportionment rule "is to fairly distribute the Federal estate tax between probate and nonprobate assets."[4] *In re Estate of Rosta* (1982),

---

[4]Estate assets (sometimes called "probate assets") "are those which are subject to the control of the probate court. They are normally subject to the claims against [the testator's] estate. They are distributed to his heirs, if there is no valid will, or in conformity with his will if there is one. Generally, estate (or probate) assets are those which are solely owned by the [testator]. They also include his share of property held as a tenant in common with one or more others, and life insurance and other property payable to the estate. All other assets and property rights of the [testator] are included in the term "non-probate assets." 1 R.S. Hunter, Estate Planning & Administration in Illinois sec. 6.7, at 47 (2d ed. 1981).

111 Ill. App. 3d 786, 793, 444 N.E.2d 704, 710.

The doctrine of equitable apportionment, permitting apportionment of Federal estate taxes among recipients of probate and nonprobate assets, was applied in *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662, where a decedent died intestate, leaving property subject to probate as well as property held in joint tenancy and outside of probate; and also in *In re Estate of Gowling* (1980), 82 Ill. 2d 15, 411 N.E.2d 266, where the decedent did not provide any direction as to the payment of taxes. *Roe* and *Gowling*, however, each involved both probate and nonprobate assets.

With further regard to the characterization as probate or nonprobate of the disclaimed stock here involved, section 2—7 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 2—7) provides as follows:

"Sec. 2—7. Disclaimer. (a) An heir, legatee, person succeeding to a disclaimed interest, beneficiary under a will or person designated to take pursuant to the power of appointment exercised by a will may disclaim in whole or in part the succession to any real or personal property or interest therein by filing a written disclaimer within the time and at the place provided in this Section. A disclaimer may be of a fractional share or of any limited interest or estate. The right to disclaim of a decedent may be exercised with leave of court by his representative.

(b) The disclaimer must (1) describe the property or part thereof or interest disclaimed, (2) be signed by the disclaimant and (3) declare the disclaimer and the extent thereof.

(c) The disclaimer must be delivered (1) if of a present interest, within 9 months after the death of the decedent or the donee of the power, as the case may be, or (2) if of a future interest, not later than 9 months after the event which determines that the taker has become finally ascertained and his interest has become indefeasibly fixed both in quality and quantity; except that with respect to a transfer creating an interest in the disclaimant made after December 31, 1976 and subject to tax under chapters 11, 12 or 13 of the Internal Revenue Code of 1954 as amended, a disclaimer made for the purpose of constituting a qualified disclaimer thereunder shall be delivered not later than 9 months after the date on which the transfer subject to tax is made."

The effect of a valid disclaimer is specified in section 2—7(e), which provides, in relevant part:

"(e) Unless the decedent or donee of the power has provided

for another disposition, the property or interest disclaimed descends or shall be distributed (1) if a present interest, as if the disclaimant had predeceased the decedent, or if the disclaimant is one designated to take pursuant to a power of appointment exercised by a will, as if the disclaimant had predeceased the donee of the power or (2) if a future interest, as if the disclaimant had predeceased the event which determines that the taker has become finally ascertained and his interest has become in *** "

■ "The right to disclaim is founded on the principle that a party does not have to accept an estate against his will; the motive of the disclaimant is immaterial provided he does not fraudulently receive a benefit for his action; *** and the disclaimer prevents passage of title to the disclaimant and is not a conveyance." *In re Detlefsen* (8th Cir. 1979), 610 F.2d 512, 514 (construing Illinois law).

■ Pursuant to section 2—7 of the Probate Act of 1975, the disclaimed shares of SJS Optical passed to Gerald and Richard as probate assets under the will of Samuel Ritholz. "[E]quitable apportionment of estate taxes or fees does not apply where a contrary intent has been manifested by the testator in his will ***." (*In re Estate of Fenton* (1982), 109 Ill. App. 3d 57, 62, 440 N.E.2d 222, 225.) In the instant case, the testator specifically expressed his intent with regard to the payment of taxes and expenses. Article II of his will provides, "it being the intention hereof that the ultimate burden of all such taxes be borne by my estate." It therefore appears clear that all taxes were to be borne by his estate and not apportioned to any particular assets or bequests.

In our opinion, therefore, the trial court erred in applying the doctrine of equitable apportionment.

## II

Plaintiffs contend also that defendant has wrongfully "intermingled estate and partnership obligations." Plaintiffs again allege that the reallocation is contrary to the language of Samuel Ritholz' will; that defendant's reallocation has utilized Partnership assets to reimburse herself for estate obligations; and that the estate expenditures (Canadian estate and income taxes, United States estate and income taxes, Illinois inheritance taxes, court costs and fees) were not Partnership responsibilities or obligations.

Defendant argues that the language of the will does not direct that Canadian taxes be paid by Samuel Ritholz' estate; that the beneficiaries of the Trust have expressed their willingness to accept her

proposed reallocation; and that defendant has given money gifts to Lorelei (defendant's daughter-in-law) and to her grandchildren, and that "a court of equity may take into consideration all [such] circumstances and equities affecting the parties."

Certainly, principles of equity and fairness underlie the doctrine of equitable apportionment. The doctrine of equitable contribution which has been applied by Illinois courts is described in J. Pomeroy's Equity Jurisprudence (5th ed. 1941):

> "*** the most important doctrine, perhaps, which results from the principle, *Equality is equity,* [emphasis added] is that of contribution among joint debtors, co-sureties, co-contractors, and all others upon whom the same pecuniary obligation arising from contract, express or implied, rests. This doctrine is evidently based upon the notion that the burden in all such cases should be equally borne by all the persons upon whom it is imposed, and its necessary effect is to equalize that burden whenever one of the parties has, in pursuance of his mere *legal* liability, paid or been compelled to pay the whole amount, or any amount greater than his proportionate share." (2 J. Pomeroy, Equity Jurisprudence sec. 411, at 157-58 (5th ed. 1941).)

This doctrine, however, has not been invoked when a contrary intention is expressed by the decedent in a will. *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662; *In re Estate of Van Duser* (1974), 19 Ill. App. 3d 1022, 313 N.E.2d 228.

■ "The cardinal rule of will construction, to which all other rules yield, is the ascertainment of a testator's intention from the will itself. [Citation.] That intention must be drawn from the will language where it has a settled legal meaning; in the absence of an ambiguity or uncertainty, evidence of the facts and circumstances surrounding the testator when he made the will may not be considered to impart a meaning other than that expressed in the will." *In re Estate of Rosta* (1982), 111 Ill. App. 3d 786, 796, 444 N.E.2d 704, 712.

We find no ambiguity in the will of Samuel Ritholz as to his intent. In article II of the will, the testator stated:

> "*I direct my executors to pay out of my estate all estate, inheritance, succession and transfer taxes,* of every nature whatsoever, federal, state and local, becoming due by reason of my death or with respect to insurance on my life or with respect to property passing under this will or which has passed otherwise than by the terms of this will, and my executors shall not be entitled to reimbursement therefor from any persons against whom such taxes may be levied or assessed, or from any who

may have received any property so taxed, *it being the intention hereof that the ultimate burden of all such taxes be borne by my estate."* (Emphasis added.)

■ We can hardly imagine a more explicit expression of a testator's intent that all taxes attributable to his estate be paid from it. The words used did not except Canadian taxes resulting from the passing of property under the will. We note also that the expenditures reallocated to the Trust by Brockhouse included not only Canadian taxes, but also United States estate taxes, Illinois inheritance taxes and court costs and fees.

■ Defendant's contention that the reallocation was approved by beneficiaries of the Trust is not entirely accurate. The trustees expressed their willingness to accept the distribution according to the reallocation only if defendant and Gerald signed an indemnity agreement to protect the trustees from personal liability. Since defendant refused to sign such an indemnity agreement, no distribution was accepted by the Trust.

■ Defendant has sought also to justify the reallocation by claiming she has made "payments" to her daughter-in-law and grandchildren. These "payments," however, were not distributions of Partnership assets, but rather were personal gifts. Although defendant's generosity is admirable and has presumptively earned the devotion and gratitude of the recipients, we do not believe these "payments" can now be characterized as payments to be charged against the proper distribution of Partnership assets.

### III

Plaintiffs contend also that the trial court erred in not ordering a complete partnership accounting.

■ Defendant concedes that plaintiffs have a right to an accounting, but argues that they have, in fact, received such an accounting.

The Uniform Partnership Act provides, in relevant part:

"The right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution, in the absence of any agreement to the contrary." Ill. Rev. Stat. 1981, ch. 106½, par. 43.

"An accounting is a statement of receipts and disbursements. A final account of a partnership or co-venture should show all of the detailed financial transactions of the business and the true status of the firm's assets. *** The account should list all receipts and disburse- --

ments made and the original vouchers, bills and cancelled checks should be tendered or available for inspection to support the items listed. It should include a listing of original contributions and current assets and liabilities.

\*\*\* in order for the account to be of any value or to fulfill the duty of accounting it cannot be merely a summary or lump listing of types of items. \*\*\* While the burden may be considerable, this does not eliminate the requirement of a proper account where a duty to account exists." *Polikoff v. Levy* (1971), 132 Ill. App. 2d 492, 500, 270 N.E.2d 540, 547.

In the instant case, defendant's accountant prepared schedules of the cash to be distributed from the Partnership but failed to detail the financial transactions of the Partnership. Brockhouse's schedules are "summary in nature" and are concerned as much with the Samuel Ritholz estate as with the Partnership. The accounting does not satisfy the requirements of *Polikoff*, and the trial court's summary approval was in our opinion error.

■ Finally, plaintiffs contend that without reallocation Brockhouse's "schedules reveal that the [Trust's] cash interest in the Partnership at dissolution was at least $51,963," and that they are entitled to this full partnership share plus interest from the date of dissolution.

Defendant argues that after reallocation, the Partnership distribution should be in the amount of $17,525 plus interest of $1,799 (totalling $19,324) which she claims is on deposit at the American National Bank (Chicago) and available for distribution to plaintiffs.

" 'Ordinarily interest is not allowed on an *unascertained* balance after dissolution of the firm in the absence of an agreement to the contrary, but where the circumstances are such as equitably to demand payment of interest it will be allowed from the time when the partnership *should have been settled*, as where one partner retained the money an unreasonable length of time or where he is wrongfully withholding it.' " (Emphasis added.) *Korziuk v. Korziuk* (1958), 13 Ill. 2d 238, 243-44, 148 N.E.2d 727, quoting 68 C.J.S. *Partnership* sec. 397.

To justify a recovery of interest for delay of payment upon dissolution of a partnership, the delay must be both unreasonable and vexatious. (*Maynard v. Richards* (1897), 166 Ill. 466, 46 N.E. 1138.) "Whether payment of a sum due and owing is delayed by unreasonable and vexatious conduct depends upon the circumstances of each case." *Dolce v. Dolce* (1982), 108 Ill. App. 3d 817, 822, 439 N.E.2d 1028, 1032.

204

In the instant case, the amounts due to plaintiffs upon dissolution of the Partnership were apparently questioned by the parties in good faith. Since we remand for a proper accounting, the trial court will then determine the extent, if any, of interest due.

For the reasons herein stated, the trial court's order granting defendant's motion for summary judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

Reversed and remanded.

HARTMAN, P.J., and STAMOS, J., concur.