## White Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner and Hunter, JJ.

*Drinker, Biddle & Reath,* for exceptants.

*Clark, Brown, McCown, Fortenbaugh & Young,* contra.

HUNTER, J., May 14, 1948.—The estate is insufficient to satisfy all legacies, and preference has been given to the specific legacies.

The specific legacies as determined by the adjudication are of the value of $156,000, and the general legacies $31,400. The net estate is $191,000 before estate and inheritance taxes. Payment of all legacies could have been made, and a small residue of $3,600 remain, had not testatrix directed that all legacies should be tax free, and the taxes paid out of residuary estate. Estate and inheritance taxes amount to $33,000, which is a tentative figure, subject to adjustment. Residuary estate not being sufficient to pay the taxes, the audit-

ing judge found, citing Greaves' Estate, 29 Dist. R. 577, that the amount of the taxes was an additional legacy, to be added to the list of general legacies, and to abate with them proportionately. This, it will be seen, is a further preference for the specific legatees, whose specific legacies constitute five sixths of the value of the estate, and further cuts down the general legacies.

Exceptant, who is a general legatee, contends that 370 shares of stock of the St. Paul Fire and Marine Insurance Company is not a specific bequest, and should be applied to the payment of taxes and general legacies; and further, that each legatee should pay his own tax to the extent that the residuary estate is insufficient for the purpose.

The facts are unusual. Decedent owned individually 1,700 shares of the St. Paul Fire and Marine Insurance Company appraised at $132,000. She also had power of appointment over a trust fund under the will of her mother in which were 370 shares of the same stock of the value of $24,000.

By her will she exercised the power of appointment and directed the payment of the appointed estate to her executors "to be added by my said executors to my own estate and the combined fund or estate is to be disposed of as follows". She then proceeded to give pecuniary legacies to various general legatees, "my holdings" of stock of the St. Paul Fire and Marine Company to two specific legatees, directed the payment of estate and inheritance taxes out of the residue "of the combined fund or estate", and the residue of "said combined fund or estate" to four named persons.

Does the specific bequest of "my holdings" of the stock include the 370 shares coming from the appointed estate? The auditing judge decided that it did.

Where there is a general power, and the donee in his will describes property in a general manner, all

distinction between property and power is abolished. In cases of implied execution arising under the Wills Act of June 7, 1917, P. L. 403, sec. 11 (now the Wills Act of April 24, 1947, sec. 14 (14)), a bequest of "my assets", Noble's Estate, 344 Pa. 81, "my estate", Finn's Estate, 18 Dist. R. 408, or property which is "possessed" or "seized", Thompson v. Wanamaker's Trustee, et al., 268 Pa. 203, includes property subject to a general power. In the English case of Re Doherty-Waterhouse, Musgrave v. De Chair, L. R. (1918), 2 Chan. 269, a bequest of "all my shares" in a certain corporation, was held to include similar shares in an appointed estate.

In the instant case testatrix left nothing to implication, and expressly blended the appointed estate with her own.

These principles of course are subject to a contrary intent appearing by the will, and the question is whether the circumstance that the estate is insufficient to satisfy all the legacies indicates that testatrix brought the appointed stock into her own estate only for the benefit of the general and residuary legatees. Exceptant contends that she must have realized that taxes and general legacies could only be paid by using the appointed estate for that purpose.

The language of the will itself gives no support to exceptant. The appointment is not made in the residuary clause alone. The direction is that the appointed estate be "added by my said Executors to my own estate and the combined fund or estate is to be disposed of as follows": The specific bequest of the stock is one of the items which is payable out of the "appointed fund or estate".

In cases beyond number, specific bequests have been preferred over general legacies under the common-law rule of abatement. It is assumed that the primary object of a testator's bounty is the specific legatee, and

that testator would want the legacy delivered to the specific legatee without charge or lien in favor of the general legatee.

In Kenworthy's Estate (No. 1), 52 Pa. Superior Ct. 152, testatrix gave general legacies without at the time having any general assets to pay them. Judge Head in an opinion which is an excellent review of the law, found that mere insufficiency of assets cannot be regarded as a satisfactory argument against the application of the general rule, and said:

". . . Were it otherwise, the rule would necessarily disappear and what is now the exception take its place, because the same argument could be made against the abatement of a general legacy in every instance."

Notwithstanding the fact that we are dealing with the blending of two estates, we believe this controversy resolves itself into an ordinary case of insufficiency of assets, without sufficient indication in the will that the usual rule of abatement of legacies is disturbed.

In our opinion the auditing judge was correct in his conclusion that all of the stock of the St. Paul Fire and Marine Insurance Company passed to the specific legatees.

The second question raised by the exceptions is whether the "tax free" clause of the will is equivalent to an additional legacy of the tax to each of the legatees, including the specific legatees of stock.

The will provides as follows:

"I direct that all the foregoing gifts, devises, bequests and life interests, shall be paid free and clear of all succession, inheritance and estate taxes, which taxes I direct shall be paid out of the residue or balance of the combined fund or estate, which residue or balance is disposed of in the next succeeding paragraph of this Will."

The residuary estate is nominal in amount and if the specific legatees of stock are entitled to an additional legacy of the tax, the general pecuniary legatees must then not only pay their own tax, but also a substantial part of the tax of the specific legatees.

The auditing judge was of the opinion that where taxes are directed to be paid out of a nonexistent residuary estate, the burden should not be transferred to other general legatees, but felt that he was bound by Greaves' Estate, 29 Dist. R. 577, McCutcheon's Estate, 19 D. & C. 131, and other cases in this court.

In our opinion the intention of a testator is to be found not only in the gift of the tax legacy, but also in his designation of the source from which the tax is to be paid. When he directs the payment of the tax out of residue he means to place the burden of the tax on the residuary legatees, and not on the general legatees. If there is no residue then there is no legacy of the tax; it is a residuary legacy and like all residuary gifts is deferred to general legacies.

Greaves' Estate was decided in 1920 when the tax burden was light. In these days of heavy taxation, care must be taken not to disturb or destroy testator's scheme of distribution.

In the instant case the specific legacies of stock are overwhelming in value and the taxes large, and the application of the rule in Greaves' Estate brings a result which is inequitable. In our opinion Greaves' Estate and the cases which follow it should be overruled where testator expressly places the burden of the tax on the residuary legatees.

Bryant's Estate, 315 Pa. 151, is in accord with this view, but attention should be called to the fact that in the latter case testator directed that the tax should be paid by residue, but only, as the will expressly said, if residue was sufficient for the purpose. The opinion in Bryant's Estate, however, makes this significant statement (p. 155) :

". . . Moreover, the clause of the will last quoted, applies to the charitable legacies as well as it does to the trust legacies, and for this reason also appellants' argument fails, . . ."

So in this case the clause directing that "all" gifts shall be free of taxes applies to the general legacies as well as to the specific legacies, and there is no indication of a preference between them. The specific legatees cannot reasonably contend that testatrix intended that their taxes should be paid by the general legatees.

Normally, every legatee must pay his own inheritance tax, and language indicating a contrary intent should be free from doubt: Uber's Estate, 330 Pa. 417. With respect to the proration of estate tax under the Pennsylvania Apportionment Act of July 2, 1937, P. L. 2762, it is said:

"The Act creates a presumption that a testator intends that proration should be made in accordance with its terms unless his will contains a specific provision, clearly expressed, inconsistent with such presumption, and, to accomplish that result, his language must not be of doubtful import": Harvey Estate, 350 Pa. 53, and Stadtfeld Estate, 359 Pa. 147.

The exceptions filed November 14, 1947, to the award of 370 shares of St. Paul Fire and Marine Company stock, or their proceeds, are dismissed, and the exceptions filed March 18, 1948, with respect to the charging of inheritance and estate taxes, are sustained.

### Dissenting Opinion

VAN DUSEN, P. J., May 14, 1948.—Section 11 of the Wills Act of 1917 does not affect the present question. The power of appointment has been expressly exercised. The question is whether—with respect to the stock in the St. Paul and Marine Company held by the appointed fund—the power has been exercised by paragraph 3 (e) or by paragraph 6. The first men-

tioned paragraph gives "my holdings" of this stock to two persons in half shares; the last mentioned paragraph gives "any balance or residue of the said combined fund or estate" to four other persons. Testatrix herself owned stock of this company; and in my opinion she refers to that stock only in paragraph 3 (e).

It is true that she gives the appointed fund to her own executors, to be added to her own estate "and the combined fund or estate is to be disposed of as follows". But instead of disposing of the combined fund in a general manner, she disposes of part of it specifically, and the question is what her specification means.

The language of a specific bequest is to be interpreted in the light of the facts as they existed at the time the will was made: Miller's Estate, 323 Pa. 9; Peterson's Estate, 242 Pa. 330; McGlathery's Estate, 311 Pa. 351. In the last mentioned case, the Supreme Court quotes from the opinion of Gest, J., as follows:

". . . to quote the familiar language of James, L. J., in Boyes v. Cook, 14 Ch. Div. 56, you may place yourself, so to speak, in the testator's arm chair and consider the circumstances by which he was surrounded when he made his will, to assist you in arriving at his intention." We are not advised to lie upon testator's deathbed in interpreting his will.

When so interpreted, of course, the language of the will is to be applied to the facts as they exist at the time of death.

"My holdings" at the time the will was made did not mean anything except that which testatrix then owned. It does not appear whether she knew that the appointed estate then contained Fire and Marine stock. But she should know that the quantity of stock which would be owned by the fund at the time of her death was uncertain. She had no control over investments. She could not have intended to give whatever the appointed fund might thereafter own, be it more or less.

When the language of a specific bequest is applied to testator's own estate, as it exists at the time of his death, it is applied to something over which he has control. He knows that after-acquired property will be included, and he can either not acquire it, or can change his will. But this testatrix had no such knowledge or power of control with respect to stock in the appointed fund.

These words continued to have the same meaning until her death. It is true that anything else which she acquired, and *which was within the meaning of the words* would pass by these words. But the *meaning* did not change.

The cases dealing with a gift of "my estate" and the like are not in point. These are general words, disposing of everything; and the policy of section 11 of the Wills Act is that when a testator gives his own property described in a general manner, the gift takes effect as a disposition of appointed funds likewise. The statute does not say that testator means that. It is a result which the law attaches to his act, whether he means it or not. I repeat that section 11 does not enter into this case.

I do not think it is material that if the stock in question is dealt with as a specific legacy, the combined fund is now barely sufficient to pay debts, expenses and taxes, leaving very little to pay general legacies of $31,200, including a legacy of $4,000 to one of the legatees of the stock. The question still is what testatrix meant when she wrote her will. We do not know what estate she then had, or what the appointed fund was then worth. Testatrix did not then know what the taxes would be, or indeed what the debts and expenses would be. The combined net value of the two funds might change very much. If the deficit was small we would feel drawn to a different conclusion.

But I respectfully submit that the decision in Kenworthy's Estate, 52 Pa. Superior Ct. 152, is not in point.

Judge Head's reasoning is unanswerable if the question is one of abatement only. But here the question in the first instance is one of interpretation. What is included within the specific legacy?

I would sustain the exceptions of November 3, 1947. If they are to be dismissed, I agree with the disposition by the majority of the question of contribution by general legatees to the tax on specific legacies.

Ladner, J., joins in this dissent.