LANDMARK TRUST COMPANY, Ex'r under the Last Will and Testament of Earl T. Aitken, Deceased, Plaintiff-Appellee, v. LOUIS F. AITKEN, Defendant-Appellant (Beverly Ann Ederle *et al.*, Defendants).

Fifth District   No. 5—90—0797

Opinion filed January 30, 1992.

Kathleen R. Sherby and Dan M. Lesicko, both of Bryan, Cave, McPheeters & McRoberts, of St. Louis, Missouri, for appellant.

Charles A. Redd, of Armstrong, Teasdale, Schlafly & Davis, of St. Louis, Missouri, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Defendant, Louis F. Aitken, M.D. (hereinafter Dr. Aitken), appeals from the October 30, 1990, order of the circuit court of St. Clair County granting summary judgment in favor of plaintiff, Landmark

Trust Company, executor under the last will and testament of Earl T. Aitken, deceased (hereinafter the Executor), and denying Dr. Aitken's cross-motion for summary judgment.

■■ The major issue we shall address in this case is whether the circuit court of St. Clair County erred in determining that section 24—3 of the Probate Act of 1975 (hereinafter Probate Act) (Ill. Rev. Stat. 1989, ch. 110½, par. 24—3) should not cause the abatement of general legacies under the testator's will in order to pay the death taxes which the residuary estate was not large enough to cover. This section of the Probate Act, which deals with the order of distribution, abatement and contribution on settlement of an estate, provides in pertinent part as follows:

> "(b) *Unless otherwise provided by the will,* if the estate of a testator is insufficient to pay all legacies under his will, specific legacies shall be satisfied pro rata before general legacies, and general legacies shall be satisfied pro rata, without any priority in either case as between real and personal estate." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 110½, par. 24—3(b).)

The Executor had determined that article second of decedent's will provided against abatement of any preresiduary (specific or general) legacies. Article second of the last will and testament of Earl T. Aitken, deceased, provided as follows:

> "I direct my executor, hereinafter named, to pay from the residue of my estate all my debts, funeral expenses, administration expenses and all estate, inheritance, succession and transfer taxes which may become due by reason of my death. Interest and penalties shall be paid in the same manner as any tax. *My executor shall not seek contribution or reimbursement from any person for payment of any part of such taxes.*" (Emphasis added.)

The Executor determined that the italicized language exhibited an intent by the testator that if there was a shortfall in the amount of the residuary estate after payment of the above expenses, the deficit should be apportioned among all beneficiaries of probate property under the will and all such legatees should contribute toward payment of the deficit. Accordingly, the Executor prepared a residuary-deficit-allocation chart by which the Executor determined that Dr. Aitken's share of the deficit, based upon the ratable portion of Federal estate tax liability and Kentucky inheritance tax generated by the decedent's interest in certain horses specifically bequeathed to Dr. Aitken, was $99,814.04.

After Dr. Aitken's refusal to pay any portion of the residuary estate deficit allocated to his specific bequests, the Executor filed on June 22, 1989, its petition to construe will and for declaratory judgment. The Executor joined as defendants all named beneficiaries under the will. Defendant Beverly Ann Ederle, the largest general legatee under decedent's will, admitted all of the allegations in the Executor's petition and concurred in the Executor's opinion that the taxes had been properly apportioned as per the residuary-deficit-allocation chart. Consistent with his refusal to pay the amount determined by the Executor to be owed pursuant to the residuary-deficit-allocation chart, Dr. Aitken denied the relevant paragraphs of the petition and asked the court to construe the will such that section 24—3(b) of the Probate Act would control payment of the residuary deficit. No defendant, other than Dr. Aitken and Beverly Ann Ederle, filed a responsive pleading to the Executor's petition.

■ Cross-motions for summary judgment were filed by Dr. Aitken and the Executor, and these motions were considered by the court based upon a stipulation of facts filed June 14, 1990, and the aforesaid parties' agreement that the matter to be determined was one of law, the construction of decedent's will. (See *In re Estate of Bresler* (1987), 159 Ill. App. 3d 535, 510 N.E.2d 1057.) The court noted in its October 30, 1990, order that section 2—1005 of the Code of Civil Procedure provides that summary judgment "shall be rendered without delay if *** there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) We note at this juncture that where a question of law is raised by an appeal, this court may determine the issue independently of the trial court's judgment. (*Arneson v. Board of Trustees* (1991), 210 Ill. App. 3d 844, 850, 569 N.E.2d 252, 256.) Further, when the evidence before the court is documentary in nature, the appellate court is not bound by the trial court's findings and may make an independent decision on the facts. (*In re Estate of Hook* (1991), 207 Ill. App. 3d 1015, 1028, 566 N.E.2d 759, 767.) Based on this standard of review, we shall set forth the relevant portions of the record now before us.

The parties' stipulation of facts indicates that Earl T. Aitken died on March 13, 1988, domiciled in St. Clair County, Illinois. Decedent's will dated May 7, 1987, and a first codicil thereto dated February 2, 1988, were collectively admitted to probate in the circuit court of St. Clair County, and plaintiff was appointed executor pursuant to article sixteenth of the will, on April 11, 1988. In addition to article second recited above, article seventeenth of the will provided that the Execu-

tor had the power and discretion "[t]o make such election affecting taxes as the executor deems advisable, without regard to the relative interests of the beneficiaries and with or without making any compensating adjustments therefor."

Articles third through thirteenth of the will provided for certain specific bequests and pecuniary general bequests. Of the general bequests which totalled $535,000, article thirteenth made the largest general bequest, in the amount of $500,000, to Beverly Ann Ederle, decedent's stepdaughter. Specific bequests of decedent's automobiles and household and personal effects were also made to Beverly Ann Ederle, in article third of the will. Articles fifth and seventh made specific bequests of the decedent's interest in all horses owned in common with Nancy Vanier and Michael Jakovac at the time of his death to, respectively, Vanier and Jakovac.

Article fourth of decedent's will bequeathed to his brother, Dr. Aitken, all of the decedent's interest in all horses owned by the decedent and Dr. Aitken in common at the time of the decedent's death and all of the decedent's interest in all horses in which he and Dr. Aitken owned an interest in common at the time of the decedent's death, "including my fifty percent (50%) share of the interest he and I own in common in a certain stallion named DANZIG, together with all income we are to receive from the interest we own in said stallion named DANZIG." Article twelfth of the will, as amended by the codicil thereto, declared the intention of decedent that on his death all of his interest in any horse in which he owned an interest in common with another person, except a certain horse named Niqua, shall pass to and be the property of that other person and instructed the executor of his last will and testament to make no claim to such interest. Said article further provided that decedent's interest in Niqua, which was owned in common with Michael Jakovac, was bequeathed to Carl Ederle, husband of Beverly Ann Ederle.

Article fourteenth of the will, as amended by codicil, named several individuals and two charities as residuary legatees. Dr. Aitken and Beverly Ann Ederle were each to receive 22½% of the residuary estate, and the remaining individuals and charities were each to receive 5% of the residuary estate.

As reported on decedent's Federal estate tax return, probate assets valued at $1,464,934.33, joint property valued at $183,595.94, and insurance proceeds valued at $963.78 were included in decedent's gross estate. In addition to the Federal estate tax return, the executor filed on December 13, 1988, an Illinois estate tax return and a Kentucky nonresident inheritance and estate tax return. The Execu-

tor made tax payments of $316,991.91, $48,538.31, and $44,202.47 to the appropriate taxing authorities, although the Executor anticipated a refund in the Federal and State estate taxes paid of between $35,000 to $45,000. The residuary probate estate was insufficient to pay all death taxes and debts and administrative expenses, with a projected resulting shortage of $220,911.25 after exhaustion of the residue, subject to the anticipated refund from the amended estate tax returns.

The circuit court recited the following conclusions of law in its order granting summary judgment to the Executor:

(1) That summary judgment is appropriate in this case.

(2) That although Illinois follows the "burden on the residue" rule with respect to allocation of estate taxes arising by reason of a decedent's death, because there was a residuary estate deficit there was no residuary estate out of which to pay estate taxes and so the "burden on the residue" rule has no application in this case.

(3) That if section 24—3(b) of the Probate Act of 1975 were applicable in the present case, the specific legatees under decedent's will would not be required to contribute any funds toward satisfaction of the residuary estate deficit because complete abatement of all general legacies under the decedent's will would be more than sufficient to cover the residuary estate deficit.

(4) That the essential question in this case is whether section 24—3(b) applies; in other words, does the will provide otherwise within the meaning of section 24—3(b)?

(5) That the first sentence of article second of the will is irrelevant to a resolution of the legal issue at hand because it does not address expressly or by implication how to allocate the remaining burden of debts, expenses and death taxes after the residuary estate has been exhausted.

(6) That the first sentence of article second does not impliedly invoke Illinois' law of abatement (section 24—3(b)) as argued by Dr. Aitken.

(7) That the second sentence of article second has no relevance to this case because no interest or penalties have been or will be paid.

(8) That the only sentence of article second that has any possible applicability to this case is the third sentence, and by this sentence, the decedent indicates his intention that *all* persons (other than residuary legatees, whose legacies are directed un-

der the first sentence of article second to be the source from which death taxes are to be paid), without distinction among specific legatees, general legatees, recipients of nonprobate property by survivorship and beneficiaries of life insurance policies, be treated conceptually in the same manner and considered in the same category in allocating the burden of death taxes. The third sentence of article second "provides otherwise" within the meaning of section 24—3(b), and therefore the rules of abatement as set forth in section 24—3(b) are inapplicable to this case.

(9) That there are no reported Illinois cases that address the meaning of the type of language contained in the third sentence of article second in a situation in which the residue is exhausted and the beneficiaries and distributees of probate and nonprobate property disagree as to how the amount of death taxes not able to be paid from the residuary estate should be apportioned.

(10) That the following cases, cited by plaintiff in its memorandum in support of summary judgment, *Mosher v. United States* (D. Conn. 1975), 390 F. Supp. 1041, and *In re Estate of White* (1948), 63 Pa. D. & C. 408, though not technically identical to the present case, are quite instructive and contain elements that are present in the instant case:

(a) The residuary estate is insufficient to pay all death taxes in full.

(b) The will contains preresiduary specific and general legacies.

(c) In the absence of a contrary testamentary provision, State law mandates that certain preresiduary legacies abate before others.

(d) The will contains a tax clause that directs payment of all death taxes and transfer taxes from the residuary estate and contains language ostensibly absolving all recipients of property as a result of the decedent's death from any obligation to defray death taxes. Also, in *Mosher* the will specified that death taxes were not to be charged against, or be subject to reimbursement by, any beneficiary, language strikingly similar to that in the present case.

(11) That Dr. Aitken's attempts to distinguish *Mosher* and *White*, in his reply to plaintiff's motion for summary judgment, are not persuasive. While in *Mosher* it is true that a recited fact was that all specific legacies were paid in full, the issue of

abatement or nonabatement of specific legacies was not litigated in *Mosher*. Contrary to Dr. Aitken's position, the *White* case does not appear to have been resolved on the basis of the Pennsylvania Apportionment Act, and this case discussed and rejected the rule of abatement.

(12) That inheritance tax is a tax imposed not upon decedent's estate but upon the right or privilege of receiving property from such estate and as such is a charge against the share or interest with respect to which such tax is assessed. In the absence of a contrary provision in the will, the ultimate burden of an inheritance tax falls upon the recipient of the property giving rise to such tax even though the executor is personally liable to pay the tax in the first instance.

(13) That the plaintiff acted fairly, reasonably and in conformity with Illinois law by considering the residuary estate deficit as consisting, on a *pro rata* basis, of Federal estate tax, Illinois estate tax and Kentucky inheritance tax.

(14) That the portion of the residuary estate deficit allocable to payment of Kentucky inheritance tax should be apportioned, *pro rata*, between the recipients of property as to which Kentucky inheritance tax was assessed.

The court ruled that the Executor's deficit-allocation chart attached to its petition to construe will and for declaratory judgment set out a fair, equitable and reasonable method of apportioning the residuary estate deficit and was in conformity with Illinois law. The court ordered that the rationale and methodology employed in the deficit-allocation chart be used in determining each of the listed legatees' shares of the residuary estate deficit, after the Federal and State estate and inheritance tax liability was finally determined. The court ordered that the Executor's and Dr. Aitken's attorney fees and costs incurred in connection with this action be paid out of the principal of decedent's estate as an expense of administration.

■ While we agree with the circuit court that the essential question in this case is whether section 24—3(b) of the Probate Act applies, we must disagree with the conclusion of the court that it does not, based on our review of Illinois case law. The operative question is whether article second "provided otherwise" than for abatement of general legacies when there is a shortfall in the residuary estate, by stating, "[m]y executor shall not seek contribution or reimbursement from any person for payment of any part of such taxes." The will must be considered in its entirety to determine the testator's intent and, to the extent possible, that construction should be adopted which

will give effect to all language employed; no technical rule of construction, however, will be permitted to interfere with ascertaining the testator's real intention. (*Griffin v. Gould* (1979), 72 Ill. App. 3d 747, 752-53, 391 N.E.2d 124, 128.) The circuit court relied on decisions from other jurisdictions in reaching its interpretation of the testator's intent in article second of the will that equitable apportionment be the desired method of handling the shortfall in the residuary estate. However, Illinois case law is controlling as to equitable apportionment issues in Illinois estates. *In re Estate of Fry* (1989), 188 Ill. App. 3d 336, 339, 544 N.E.2d 109, 111.

■■ "Equitable apportionment" is the term which is used to describe the process of distributing the burden of certain estate expenses among those beneficiaries in the same proportion as they respectively cause such expenses to be incurred. (*Horwitz v. Ritholz* (1984), 125 Ill. App. 3d 193, 198, 465 N.E.2d 642, 645.) The United States Supreme Court has held that States are free, if they so choose, to apportion the burden of estate taxes. (*Riggs v. Del Drago* (1942), 317 U.S. 95, 97-98, 87 L. Ed. 106, 110-11, 63 S. Ct. 109, 110.) While many jurisdictions have specific statutes providing for equitable apportionment of estate taxes among beneficiaries of the taxable estate, except where provided for otherwise by the will (Annot., 37 A.L.R.2d 14 (1954)), Illinois applies this doctrine only by case law. The Illinois Supreme Court has permitted apportionment of Federal estate taxes among recipients of *probate and nonprobate* assets where a decedent dies intestate, leaving property subject to probate as well as property held in joint tenancy and outside of probate (*Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662), and also where the decedent did not provide any direction as to the payment of Federal estate taxes in his will (*In re Estate of Gowling* (1980), 82 Ill. 2d 15, 411 N.E.2d 266). In other words, Illinois recognizes contribution from surviving joint tenants and life insurance beneficiaries towards payment of the Federal estate tax upon the jointly owned property or life insurance proceeds which an executor or administrator must include in the decedent's gross estate for Federal estate tax purposes, along with contribution from the legatees or devisees for the taxes generated by the decedent's probate estate assets. However, equitable apportionment of Federal estate tax liability among recipients of probate and nonprobate assets is not recognized under Illinois law when the will directs, as in the instant case, that the estate will be responsible for payment of "all estate, inheritance, succession and transfer taxes," and that "my executors shall not be entitled to reimbursement therefor from any persons against whom such taxes may be lev-

ied or assessed, or from any person who may have received any property so taxed." (See *Horwitz*, 125 Ill. App. 3d at 201-02, 465 N.E.2d at 647.) Such language is construed to be a clear intention to the contrary of equitable apportionment. Additionally, a direction in a will that taxes were to be paid from the residuary estate without reimbursement from any person has been held to be a clear expression of the testator's intent that the equitable apportionment doctrine should not apply. *In re Estate of Fry* (1989), 188 Ill. App. 3d 336, 339-40, 544 N.E.2d 109, 111.

In the instant case the executor sought to apply the doctrine of equitable apportionment beyond the application heretofore recognized by the Illinois Supreme Court, by asking the court to construe the language of article second, "[m]y executor shall not seek contribution from any person for payment of any part of such taxes," to be a direction that equitable apportionment be utilized among beneficiaries of the preresiduary *probate* estate where the residuary estate is insufficient to satisfy payment of the death taxes directed to be paid by the will. We do not, however, construe the language in article second as a direction or an intent by the testator that equitable apportionment be utilized for payment of the deficit, based on our review of Illinois case law and a reading of the will in its entirety. We further decline to extend the doctrine of equitable apportionment beyond the parameters set by the supreme court in *Gowling* and *Roe*, absent a clear indication in the will that the testator intended for equitable apportionment to be utilized.

■ A related issue of whether equitable apportionment of Federal estate tax liability among every beneficiary, preresiduary and residuary, was appropriate under a will where only probate assets were involved was decided by this court in *In re Estate of Maddux* (1981), 93 Ill. App. 3d 435, 417 N.E.2d 266. In *Maddux* we determined that the current rule of apportionment, as determined by the supreme court in *Gowling* and *Roe*, is that both probate and nonprobate assets should be subject to Federal estate taxes because both types of assets generate estate tax liability, in the absence of a direction otherwise from the testator. (*Maddux*, 93 Ill. App. 3d at 436, 417 N.E.2d at 268.) However, we noted that in *Gowling* the supreme court implicitly approved the common law burden-on-the-residue rule, reiterated by the appellate court's holding therein that the Federal estate tax liability "shall be borne to the extent possible by the residue of those assets, and upon extinguishment of that sum shall be paid out of the remaining probate assets according to the rules on abatement" (*In re Estate of Gowling* (1979), 77 Ill. App. 3d 548, 554, 396 N.E.2d 82, 86).

(*Maddux*, 93 Ill. App. 3d at 437, 417 N.E.2d at 268-69.) We therefore reasoned that where the will is silent as to payment of taxes, as between the various probate assets, Illinois follows the burden-on-the-residue rule, but to the extent nonprobate assets exist which generate estate tax liability, contribution may be sought on a proportionate basis. (*Maddux*, 93 Ill. App. 3d at 436-47, 417 N.E.2d at 268-69.) Accordingly, we declined to extend the equitable apportionment doctrine among recipients of assets from an estate made up of only probate property where there was no statute so directing or provision in the will directing an apportionment-manner of payment. (*Maddux*, 93 Ill. App. 3d at 437, 417 N.E.2d at 269.) Moreover, this court has rejected extension of equitable apportionment among recipients of testate and intestate property of a decedent's estate which consisted solely of probate assets, where the decedent expressed a contrary direction by way of language that the specific devisees and legatees receive their respective devises and bequests without the deduction of any taxes. (*In re Estate of Fenton* (1982), 109 Ill. App. 3d 57, 62, 440 N.E.2d 222, 225.) In a more recent decision the court on review has rejected an argument that equitable apportionment should be applied though the residuary estate would be exhausted by payment of estate taxes, declining to further extend the doctrine to comport with decisions from other jurisdictions. *In re Estate of Fry*, 188 Ill. App. 3d at 339, 544 N.E.2d at 111.

While we agree that the burden-on-the-residue rule of construction is not applicable in the instant case, it is not because there was no residuary estate, as the circuit court found, but because the testator specified what property shall assume the burden of Federal estate taxes, other taxes and costs of administration. In the instant case the decedent specifically directed that all taxes which may become due by reason of his death be paid from his residuary estate. Therefore, the direction for payment has the same effect as application of the burden-on-the-residue rule with respect to Federal estate taxes and also makes inapplicable the equitable apportionment doctrine set forth in the *Gowling* and *Roe* decisions. The residuary estate must first be utilized to satisfy Federal estate taxes and other taxes and costs of administration, without contribution from the recipients of nonprobate property, the joint tenancy interests or life insurance proceeds for the Federal estate tax liability generated by those assets.

We further acknowledge the distinction between inheritance taxes and estate taxes noted by the circuit court in its conclusions of law. However, a testator may specify what property shall assume the burden of inheritance tax on the transfer of or the right of succession to

his estate. (*In re Estate of McDonald* (1942), 314 Ill. App. 148, 150, 41 N.E.2d 128, 130.) Therefore, the distinction between inheritance and estate taxes is immaterial in a case such as this where the testator has expressed an intention that all taxes attributable to his estate be paid from the residuary estate. (See *Horwitz v. Ritholz* (1984), 125 Ill. App. 3d 193, 201-02, 465 N.E.2d 642, 647-48.) The first sentence of article second could not express a clearer intent but that all death taxes, including inheritance taxes, be paid from the testator's residuary estate. Therefore, independent of the equitable apportionment or abatement issue, Dr. Aitken cannot be called upon to pay the Kentucky inheritance tax by way of a charge or levy upon his interest in the specified horses.

■ We also disagree with the conclusion of the circuit court that a residuary estate deficit must be categorized as the nonexistence of a residuary estate. In order to calculate the residuary estate and determine that there was a deficit, the executor had to segregate the specific legacy assets from the general pecuniary or liquid assets and thereafter determine what was left over after the general bequests would be paid. Implicit in a finding that there was a $220,000 deficit in the residuary where the estate and inheritance taxes paid totalled $400,000 is that there was a certain amount of money that the executor had available out of the residuary to pay towards the obligations singled out in sentence one of article second. We find, based on the facts presented, that there was a residuary estate, but that it was insufficient to satisfy the specified residuary obligations. The issue, as refined, is what, if any, direction was given by the testator concerning payment of the deficit.

■ Under Illinois law a testator is deemed to have acted upon the belief that his estate would be sufficient to answer the purposes to which it is devoted, but, if the chances of deficiency are anticipated, the order in which a legacy shall abate may be controlled by direction of the testator expressed in his will. (*In re Estate of McDonald*, 314 Ill. App. at 151, 41 N.E.2d at 130.) In such cases, however, the testator indicates that a certain legacy is to be given priority over others such that in the case of a deficiency in the estate, his wish will be enforced. (*In re Estate of McDonald*, 314 Ill. App. at 151-52, 41 N.E.2d at 131.) In the absence of a provision in the will for a scheme of disposition, general legacies suffer and abate *pro rata*, consistent with the Illinois abatement statute, now section 24—3(b) of the Probate Act. *In re Estate of Fleer* (1974), 21 Ill. App. 3d 56, 59, 315 N.E.2d 260, 262.

■ As one Illinois court has previously stated, "[a] rule of construction which prefers specific over general bequests and devises in the allocation of the burden of debts and taxes, which in substance is the residue rule which Illinois courts have long followed, is not manifestly unfair or a great distance apart from what a decedent's desires might ordinarily be assumed to be if [the] matter had been given full and adequate consideration." (*In re Estate of Phillips* (1971), 1 Ill. App. 3d 813, 816, 275 N.E.2d 685, 688.) A "specific legacy" singles out a particular thing or things which the testator intends the donee to have without regard to their value, and a "general legacy" can be satisfied out of general assets, since the chief element of the gift is its value. (*In re Estate of Berman* (1963), 39 Ill. App. 2d 175, 177-78, 187 N.E.2d 541, 544.) We find that, by directing in the will that the burden of death taxes was to fall on the residuary estate, the testator expresses a similar preference for specific devisees and legatees over the general devisees and legatees. Whether by rule of construction or specific direction in the will, the result is consistent with the legislative pronouncement set forth in the abatement statute whereby specific legacies are preferred over general legacies such that the specific legacies are satisfied first if the estate is insufficient to pay all legacies.

Moreover, our review of the facts herein indicates that the only legacies over which the testator indicated any preference were the specific legacies of his interests in horses owned in common with another person, except for a horse named Niqua, that is, the horses owned in common with Dr. Aitken, Nancy Vanier and Michael Jacovac. In article twelfth the testator provided that the executor was to make no claim to such interest. We further find that the language in article second, "my executor shall not seek contribution or reimbursement from any person for payment of any part of such taxes," is a direction *against* equitable apportionment, not against abatement, consistent with the above-noted Illinois decisions. Thus, the testator's intention gleaned from the will as a whole does not support an intention that the testator wanted equitable apportionment of the residuary estate deficit among the preresiduary legatees and recipients of nonprobate property.

We also note that in *Mosher v. United States* (D. Conn. 1975), 390 F. Supp. 1041, which was relied upon by the circuit court in the instant case in reaching its decision, the executor had argued that a combined direction, to pay taxes from an insufficient residuary estate but not to reduce bequests by proration or seek reimbursement for the taxes, required the tax clause to fail and required the execu-

tor to prorate the taxes according to that State's statutory apportionment scheme. The district court rejected the argument, finding that such language was an unambiguous direction against prorationing, and concluded that the preresiduary bequests must ratably abate to satisfy payment of the taxes. (*Mosher*, 390 F. Supp. at 1044-45.) In contrast, we find that the direction in the instant case not to seek contribution or reimbursement was not an unambiguous rejection of the Illinois rules of abatement but rather the testator's direction against equitable apportionment.

While the *Mosher* and *White* decisions were relied upon by the circuit court in reaching its decision because the cases had certain facts in common with the instant case, we decline to accord them any authority with respect to our decision, particularly because, as Dr. Aitken duly notes, unlike Illinois the jurisdictions in which *Mosher* and *White* were decided had enacted equitable apportionment statutes. The enactment of such statutes creates a presumption that the testator intended that the taxes be apportioned in the statutory manner. (Annot., 37 A.L.R.2d 14 (1954).) A testator is presumed to have known the law and to have made his will in conformity, and therefore the state of the law when a will is made affords considerable assistance in ascertaining a testator's intention, if otherwise unclear. (*Belfield v. Findlay* (1945), 389 Ill. 526, 529, 60 N.E.2d 403, 404.) The same presumption accorded equitable apportionment statutes will likewise be accorded the statute on abatement enacted by the Illinois legislature, which was in effect at the time the decedent in the instant case executed his will and codicil thereto.

We hold, therefore, that the testator did not "provide otherwise" than for the statutory abatement scheme set forth in section 24—3(b) of the Probate Act and that the circuit court of St. Clair County erred in entering summary judgment for the Executor on this issue. Accordingly, we reverse the October 30, 1990, order of the circuit court of St. Clair County and enter judgment in favor of defendant, Louis F. Aitken, M.D., on his cross-motion for summary judgment.

■■■ Dr. Aitken and the Executor have both prayed for an order from this court that their respective attorney fees and costs incurred in this appeal and in any subsequent related proceedings before the trial court be paid from the assets of the estate as an expense of administration. An ambiguity in a will justifies suit for construction, and the trial court, finding the need for construction, properly allowed attorney fees and costs for both parties to be

charged as a cost of administration. (See *Orme v. Northern Trust Co.* (1962), 25 Ill. 2d 151, 183 N.E.2d 505.) The party appealing the construction placed upon a will by the lower court, however, does so at his own risk and cost. (*Glaser v. Chicago Title & Trust Co.* (1948), 401 Ill. 387, 393, 82 N.E.2d 446, 449.) By our reversal of the October 30, 1990, order of the circuit court of St. Clair County and entry of judgment in his favor, Dr. Aitken was vindicated on appeal in the assertion of a construction of the will contrary to that placed upon it by the court below. We find, therefore, that Dr. Aitken is entitled to an order that his reasonable attorney fees and costs on appeal be paid as a cost of administration of this estate. (See *Rosenthal v. First National Bank* (1970), 127 Ill. App. 2d 371, 374-75, 262 N.E.2d 262, 264.) The attorney for the Executor is entitled to reasonable compensation for his services under section 27—2 of the Probate Act (Ill. Rev. Stat. 1989, ch. 110½, par. 27—2), where the executor's interest in the appeal, as appellee, was to sustain the judgment of the lower court. (*Dyslin v. Wolf* (1952), 347 Ill. App. 80, 87-88, 106 N.E.2d 193, 196.) Because the determination of what constitutes reasonable compensation is a matter peculiarly within the discretion of the trial court (*Estate of Knight v. Knight* (1990), 202 Ill. App. 3d 258, 261, 559 N.E.2d 891, 894), we must remand this proceeding to the circuit court of St. Clair County to determine Dr. Aitken's and the Executor's reasonable attorney fees and costs in this appeal and to enter judgment in favor of Dr. Aitken and the Executor, respectively, for the compensation so determined and to order that said judgments be paid by the estate as a cost of administration consistent with our judgment on appeal in favor of Dr. Aitken.

Reversed and remanded.

HARRISON and LEWIS, JJ., concur.