NO. 4-03-0740

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Estate of ) Appeal from

GEORGIANA OVERTURF, Deceased, ) Circuit Court of

SHIRLEY GREEN, Independent Executrix, ) Livingston County

Petitioner-Appellant, ) No. 95P79 

v. )

MARIAN CHAPMAN, Independent Executrix, ) Honorable

Respondent-Appellee. ) Charles H. Frank,

) Judge Presiding.

_________________________________________________________________

JUSTICE MYERSCOUGH delivered the opinion of the court: 

On June 8, 1995, the trial court admitted decedent Georgiana Overturf’s will and codicil to probate.  The court also appointed decedent’s daughters, Shirley Green (appellant) and Marian Chapman (appellee), independent executrixes of the estate.  For federal estate-tax purposes, decedent’s estate, including the personal probate-estate property ($327,100.64), the real probate-estate property ($716,283.73), and nonprobate joint-tenancy property ($605,811.88) totaled $1,649,196.25.  Decedent’s will directed the executrixes to pay debts, expenses, and taxes out of her personal probate estate so that no beneficiary would be required to reimburse the estate.  Decedent’s personal estate, however, did not contain sufficient assets to pay all the estate taxes and expenses.  The court found the rule of equitable apportionment applied and ordered payment of a proportional share of estate taxes by the daughters, who are recipients of the nonprobate joint-tenancy assets.  Green appealed, arguing the court erred in holding that the rule of equitable apportionment applied to decedent’s nonprobate estate.  We reverse and remand with directions.

I. BACKGROUND

Decedent, a widow, died on March 29, 1995.  In her will and codicil, decedent named her daughters sole beneficiaries of the probate estate and appointed them as independent coexecutrixes of the estate.  Both daughters and their respective children were also recipients of decedent’s nonprobate joint-tenancy assets.  The allocation of the nonprobate real-estate property transferred by joint tenancy included $321,479.26 to Green, $4,161.52 to Green’s children, $273,989.04 to Chapman, and $6,182.06 to Chapman’s children.  On June 8, 1995, the trial court admitted decedent’s will to probate.  Shortly after, the daughters disclaimed their interests in the real probate property, and as a result, decedent’s grandchildren inherited decedent’s real probate estate.  Both daughters agreed that they are responsible for their respective children’s estate tax obligations.  

The parties agreed that decedent's estate’s debts totaled $473,886.96, including $374,886.96 in federal and state estate taxes, $49,500 in executor fees, and $49,500 in legal fees.   Decedent’s will directs payments of estate taxes from her probated personal estate.  Specifically, article fifth of the will states as follows:

"I direct that my Executors hereinafter named retain possession of all of my farm real estate for the farm year in which my death occurs and the proceeds of the grain rents therefrom shall be considered part of my personal estate.

I direct that my Executors pay from the rest, residue[,] and remainder of my personal estate (including the proceeds of the sale of grain raised in the year in which my death occurs) all of my just debts, funeral expenses, the expenses of administering my estate, the [f]ederal [e]state [t]ax (if any), and all state inheritance taxes (if any) assessed any legatee or devisee under this [w]ill.

It is my will that all estate and inheritance taxes which shall become payable by reason of my death shall be treated as part of my just debts[,] and no beneficiary shall be required to reimburse my estate for any estate or inheritance tax on his or her account or chargeable to him or her."

Decedent’s probate personal estate, however, only totaled $327,100.64, resulting in a $146,786.32 deficiency. 
 

The parties disagreed on how to pay the outstanding estate debts.  Green argued the will provided that the death taxes should be paid from the probate estate, and equitable apportionment should not apply to the nonprobate estate.  Chapman argued equitable apportionment should apply to the nonprobate estate and taxes attributable to the nonprobate assets should be paid from those assets.  The parties agreed that due to the insufficiency of the decedent’s probated personal estate, each one would contribute to the estate.  The parties then entered into an agreement that provided, without waiving their respective positions, Green would contribute $79,978.06 and Chapman would contribute $68,806.26 to the estate to pay the outstanding tax.  These contribution amounts are proportionate to the nonprobate joint-tenancy assets that each party and their children received. 

On June 6, 2003, the trial court held a hearing on the issue of apportionment of the estate debts.  On June 18, 2003, the court found equitable apportionment applied to the nonprobate estate.  On July 2, 2002, Green filed a motion for reconsideration, which the court denied on July 30, 2003.  This appeal followed.  

II.  ANALYSIS

On appeal, Green argues the trial court erred in applying equitable apportionment to decedent’s nonprobate estate because decedent’s will provided that estate taxes and fees  attributable to nonprobate assets are to be paid from decedent’s probate estate.  We agree.

The interpretation of a will is a question of law that this court reviews 
de
 
novo
.  See 
Thomson v. Ricks
, 21 Ill. App. 2d 465, 476, 158 N.E.2d 440, 445 (1959).  The purpose of will interpretation
 is to ascertain and, if possible, give effect to the intention of the testator.  
Peck v. Drennan
, 411 Ill. 31, 38, 103 N.E.2d 63, 66 (1951).  In interpreting a particular provision of a will, the law authorizes and requires a consideration of the whole will.  
Further, the testator’s intention is to be gathered not from one clause of the will alone, but from the instrument as a whole and all of its parts, bearing in mind the plan of the testator as expressed in the entire will.  
Whitmore v. Starks
, 17 Ill. 2d 202, 206, 161 N.E.2d 254, 257 (1959). 

In deciding beneficiaries’ federal estate-tax obligations, Illinois courts have consistently applied the doctrine of equitable apportionment to permit the apportionment of the estate taxes among recipients of probate and nonprobate assets.  However, Illinois does not allow equitable apportionment as to nonprobate assets where the testator has expressed a clear intention to the contrary.  
In re Estate of Fry
, 188 Ill. App. 3d 336, 338-39, 544 N.E.2d 109, 111 (1989).  The sole question in the case before us, therefore, is whether decedent expressed a clear intention contrary to equitable apportionment in her will.

As stated above, decedent’s will stated that all estate and inheritance taxes shall be treated as part of her debts and no beneficiary shall be required to reimburse the estate for any estate or inheritance tax.  In addition, in a codicil that decedent executed eight months before her death, decedent expressly stated as follows:

"I give and bequeath upon my daughters, MARIAN CHAPMAN, of Pontiac, Illinois, and SHIRLEY GREEN of Saunemin, Illinois, in equal shares, share and share alike[,] all of my household goods, furnishings[,] and personal effects, including antiques, which I may own at the time of my death, it being my desire that my said two daughters be treated alike and equally insofar as possible."  

The above language demonstrates decedent’s clear intention to treat her two daughters equally and not to require any beneficiaries to reimburse her estate for taxes from their personal accounts.

Such language is similar to the language in question in 
Fry
.  
In 
Fry
, 188 Ill. App. 3d at 338, 544 N.E.2d at 110, article two of the decedent’s will provided as follows: 

"All estate and succession taxes, including interest and penalties payable by reason of my death, shall be paid out of and be charged against the principal of my residuary estate, without reimbursement from any person." 

The decedent’s residuary estate, however, was insufficient to cover decedent’s estate taxes.  The parties argued whether the doctrine of equitable apportionment should apply to the decedent’s nonprobate estate and whether the recipient of the nonprobate estate should be required to share in the taxes.  The appellate court in 
Fry
 found that the language in article two clearly expressed the decedent’s intention that "the taxes be paid from the residuary estate and not from the nonprobate asset received by the respondent."  
Fry
, 188 Ill. App. 3d at 340, 544 N.E.2d at 111.  The court, therefore, held that "the doctrine of equitable apportionment cannot be applied here and thus the respondent cannot be required to share in the taxes and expenses of the estate."  
Fry
, 188 Ill. App. 3d at 340, 544 N.E.2d at 111.  The court lastly noted that "although the residuary estate will be exhausted, there are ample assets *** in the probate estate to pay the [f]ederal estate taxes and the expenses of administration."  
Fry
, 188 Ill. App. 3d at 340, 544 N.E.2d at 111-12.   

Similar to the decedent in 
Fry
, decedent in the instant case clearly stated her desire not to have her daughters be personally responsible for her estate’s taxes.  In addition, decedent’s probate estate also contains sufficient assets to satisfy the outstanding estate obligations.  Therefore, decedent expressed a clear intention not to apply equitable apportionment of her nonprobate estate taxes in her will.  Accordingly, we reverse the trail court’s judgment and hold that any deficiencies should be assessed against decedent’s probate real estate.   

III. CONCLUSION

For the reasons stated, we reverse the trial court’s judgment.

Reversed and remanded with directions.

MCCULLOUGH, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I respectfully dissent and would affirm the trial court's decision. 

Decedent attempted to divide her substantial estate equally between her daughters, Green and Chapman.  Each received real property under the will and each received nonprobate real estate through joint tenancies.  It is difficult to divide real estate equally, however, and Green received real estate worth more than Chapman.  The majority reverses the trial court because it says it wants to treat the daughters equally.  It is not equal treatment, however, to split the estate tax equally between unequal recipients, 
i.e.
, to require Chapman to pay taxes on the real estate received by Green.  Chapman received real estate worth less than the real estate received by Green, and now Chapman is required to pay a disproportionate share of taxes.

I agree that 
Fry
 is the key case here.  
Fry
 begins with the proposition that equitable apportionment, the distribution of the burden of estate taxes among the beneficiaries in the same proportion as they respectively cause such expenses to be incurred, is the general rule in Illinois.  Equitable apportion-ment promotes fairness and equality and makes good sense, although the concern has been expressed that Illinois does not provide for equitable apportionment by statute.  
Fry
, 188 Ill. App. 3d at 338, 544 N.E.2d at 111.  Nevertheless, equitable apportionment will be applied unless "the testator has expressed a clear intention to the contrary."  
Fry
, 188 Ill. App. 3d at 339, 544 N.E.2d at 111. 

In 
Fry
, the testator directed that all taxes due by reason of her death be paid out of "'my residuary estate, without reimbursement from any person.'"  
Fry
, 188 Ill. App. 3d at 338, 544 N.E.2d at 110.  Again, such a provision makes good sense.  Under it, every specific gift made by the testator is honored in full, without any charge against the beneficiary.  The taxes and expenses of the estate are paid out of the residue, that which is left of the estate after the various gifts are made.  In a case like ours, where the residue is divided equally between the two individuals who receive the rest of the estate, the direction for payment from the residue may result in one individual paying more than her share.  Such a result may be justified, however, on the basis that it is important that all specific gifts be honored in full, without concern that it may be necessary to liquidate the gift to pay the taxes on it.  Division of what is left over in the residue is generally less important to a testator than the specific gifts that have been made.     

In 
Fry
, the question was whether the taxes on a nonprobate gift of real estate should be paid out of the probate estate even after the residue was exhausted.  Why should nonprobate gifts be favored over probate gifts?  If a testator gives 80 acres to one son by means of joint tenancy and another 80 acres to another son by will, why should either son be given some advantage in the payment of taxes? 

The court in 
Fry
 stated that the intent of the testator was clear that the taxes be paid from the residuary estate and not from the nonprobate asset received by the respondent.  The court went on to note that although the residuary estate will be exhausted, there were ample assets in the probate estate to pay the federal estate taxes and the expenses of administration.  
Fry
, 188 Ill. App. 3d at 340, 544 N.E.2d at 111-12.  It is difficult to explain that reasoning.  
Fry
 relied upon 
In re Estate of Wheeler
, 65 Ill. App. 2d 201, 203, 213 N.E.2d 35, 36 (1965), but in that case the will provided that the taxes were to be paid out of the principal of the estate, not the residuary estate.  Perhaps the explanation is that the will in 
Fry
 contained only one minor "specific" bequest, a bequest that singles out a particular thing the testator intends the donee to have without regard to its value.  
Fry
, 188 Ill. App. 3d at 337, 544 N.E.2d at 110; see 
Landmark Trust Co. v. Aitken
, 224 Ill. App. 3d 843, 856, 587 N.E.2d 1076, 1085 (1992).  The 
Fry
 will apparently consisted primarily of a "general" bequest to the testator's stepson (was the nonprobate gift to testator's natural son?).  A general bequest is one that could be satisfied out of general assets, one where the chief element of the gift is its value.  A general bequest is somewhat similar to a gift of the residue.  "[S]pecific legacies are preferred over general legacies such that the specific legacies are satisfied first if the estate is insufficient to pay all legacies."  
Landmark Trust
, 224 Ill. App. 3d at 856, 587 N.E.2d at 1085; 755 ILCS 5/24-3(b) (West 2002).

None of that analysis has any relevance here.  There is no question here whether the nonprobate assets should be favored over the probate assets.  Green and Chapman received both.  There is no question whether general bequests should pay the taxes on specific bequests.  All the gifts to Green and Chapman, other than the residue, are specific gifts.  The majority says that "[s]imilar to the decedent in 
Fry
, decedent in the instant case clearly stated her desire not to have her daughters be personally responsible for her estate's taxes."  Slip op. at 7.  The majority decision does nothing to further that intent.  The daughters will be personally responsible for the estate's taxes in any event.  There is not enough money in the estate, either in the residue or in general bequests, to pay the taxes on the specific gifts of real estate.  Green and Chapman are going to have to reach into their own pockets to pay these taxes.  The only question is whether Chapman has to pay taxes incurred by Green's receipt of property.  Nothing indicates any such intent on the part of the decedent.  The decedent directed that taxes be paid "from the rest, residue and remainder of my personal estate."  That has been done to the extent possible.  The trial court refused to require Chapman to pay the additional taxes, and so should we.